Argued 30 March, decided 29 May, 1905.

## POWERS v. POWERS.

80 Pac. 1058.

APPEAL IN EQUITY CASES—EFFECT OF FINDINGS OF TRIAL JUDGE.

1. Under B. & C. Comp. §§ 406 and 555, an equity appeal is tried in the supreme court on the transcript and the evidence, and a decree rendered accordingly, without reference to the findings or conclusions made by the trial court.

DEED—EVIDENCE OF FRAUD—CARELESSNESS.

2. A deed cannot be avoided on the ground of fraud where the evidence as to the preparation and execution of the instrument is conflicting, and the grantor was in full possession of her faculties unimpaired by disease, and was competent to transact business, particularly where the grantor signed the paper without reading it or inquiring as to its contents.

AVOIDING DEED FOR FRAUD—RELATIONSHIP OF PARTIES.

3. A deed from a parent to a child is not void merely because of the relationship of the parties.

AVOIDING DEED FOR LACK OF CONSIDERATION.

4. Inadequacy of price, though a badge of fraud, is not alone a ground for setting aside a deed.

AVOIDING DEED IMPROVIDENTLY MADE.

5. The fact that a deed by a mother to a son was improvident or unwise is not a reason for setting it aside, though it might have some weight in connection with other circumstances.

From Linn: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Mary Ann Powers against S. B. Powers to set aside for fraud a deed executed and delivered by the plaintiff to the defendant on February 11, 1890. The plaintiff in her complaint alleges that she is the wife of one W. M. Powers and the mother of the defendant; that on February 11, 1890, she was, and still is, the owner of and in possession of the premises described in the deed in question, and that they are of the value of $7,000; that for some days prior to the date mentioned, and for many days thereafter, her husband was very ill and his life despaired of; that during such time the defendant, for the purpose of overreaching, wronging and defrauding her, falsely and fraudulently represented that his father was indebted to him in a large sum, the exact amount of which he was unable to state, and that if he died he would lose the amount due him, and urged and importuned her to sign a written statement to the effect that if his father died she would see him fairly treated in the settlement of the estate; that relying on such statement, and believing it to be true, she agreed to sign the statement requested; that, to carry out his purpose of overreaching and defrauding her,

defendant caused a deed to be prepared, conveying the property to him in fee simple, and falsely and fraudulently represented that it was the written statement which she had agreed to sign; that relying upon such representations, and trusting in her son, she signed the deed without reading it or knowing its character, believing it to be such statement; that defendant thereupon took possession of the deed, and secretly held the same until August 8, 1902, when he caused it to be recorded; that she has remained in the possession of the property since the execution of the deed, receiving and enjoying the rents and profits thereof; that at the time of its execution the defendant's father was not indebted to him in any sum whatever, and all the statements and representations in reference thereto so made by the defendant were and are false and untrue, and were made for the purpose of overreaching and defrauding plaintiff. The defendant in his answer denies in toto the material allegations of the complaint, and avers that, at the request of plaintiff and his father, he worked and labored on the land owned by them for a period of about eight years, for which services they agreed to pay; that on or about the 8th day of February, 1890, he had an accounting and settlement with the plaintiff, wherein it was ascertained and agreed that she and his father owed him for such work and labor about $3,000; that the deed in question was executed and delivered in payment thereof, it being understood and agreed, however, that plaintiff should have the use and occupation of the premises and enjoy the rents and profits thereof so long as she lived, but by mistake such reservation of a life estate was omitted from the deed, and the answer asks to have it reformed accordingly. The reply denied the material affirmative allegations of the answer, and, upon the issues thus joined, the cause was tried and a decree entered reforming the deed as prayed for by the defendant, but otherwise dismissing the complaint. From this decree the plaintiff appeals.        AFFIRMED.

For appellant there was a brief over the names of *Hewitt & Sox* and *John James Whitney,* with an oral argument by *Mr. Henry Harrison Hewitt* and *Mr. Whitney.*

For respondent there was a brief over the names of *Myron Edwin Pogue* and *Percy R. Kelly,* with an oral argument by *Mr. Pogue.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Much of appellant's brief is devoted to a discussion of the question whether the findings of fact of the trial court are supported by the evidence. Under our statute, on an appeal from a decree in a suit in equity, the cause is tried de novo upon the transcript and evidence accompanying it, and a final decree rendered here, without reference to the findings or conclusions of the trial court: B. & C. Comp, §§ 406, 555; *Gentry* v. *Pacific Livestock Co.* 45 Or. 233 (77 Pac. 115). It is unnecessary, therefore, to examine the findings seriatim to determine whether they are in accordance with the testimony. It is sufficient to state generally our conclusions.

2. The plaintiff and defendant are mother and son. It is admitted, because not denied, that about the time the defendant became of age his father was considerably in debt, and it was agreed between them that if he would remain at home on the farm and help pay off the debt he should have 80 acres of land adjoining that in controversy. He worked two or three years, but became discouraged because the debts were not being paid off, and, when he attempted to talk to his father about the matter, the latter became angry and ordered him to leave. He decided to do so, and so advised his mother, who told him that as his father was sick and the other children were small, she could not get along without him, and, if he would remain and "see them through," she would see that he was paid for his labor. Thereupon he took charge of the farm, consisting of about 360 acres, managed and cultivated it for about five years until his brothers became large enough to take care of things, when he went away to work for himself. During the time he was at work on the place he was not paid anything for his services, except a small amount for spending money occasionally; and when he worked for the neighbors his wages were collected and used by his father. So far there is practically no dispute in the testimony, but there is a serious controversy concerning the making of the deed sought to be canceled and set aside.

The defendant contends that it was made by his mother voluntarily in payment for the amount due him for labor and services as stated. She claims, on the other hand, that she did not intend to execute a deed, but only to sign a written statement that in case of his father's death she would see that he was paid for his services from the estate. The plaintiff and defendant are practically the only witnesses who testify about the matter. The scrivener who drew the deed and before whom it was executed, and the subscribing witness thereto, have no particular recollection of the transaction. The plaintiff testifies that in the spring of 1890 the defendant returned from his work on the railroad; that his father was very sick at the time, and it was not expected that he would long survive; that defendant complained about having never received any pay for his work on the farm, and seemed to imagine that he would not be paid if his father died; that she told him that if anything happened to his father she would see that he was treated right in the settlement of the estate, and would sign a written statement to that effect; that on the day the deed was executed she told him that she had to go to Albany on business, and was ready to execute the paper as stated; that after arriving in town, while she was doing some shopping, the defendant came to her and told her that if she would go to Redfield's office she could sign the paper as agreed upon; that she went to the office, and there signed a paper which had already been prepared, and which she supposed was the written statement; that it was not read to her, nor did she make any inquiry as to its contents, or endeavor to ascertain whether it was as agreed or not; that no representations on the subject were made to her at the time; that it was taken possession of by the defendant, and she never saw it afterwards, and first learned that defendant claimed an interest in the place a short time before this suit was commenced.

The defendant flatly contradicts this testimony, and says that he came home from the railroad and remained during the winter of 1889-90, and took charge of things as usual; that one day his mother said to him that she wanted him to take her to Albany, as she desired to make him a deed to the place, because he had never received anything for his work, and she could not die easy

without knowing that he had been paid; that they talked the matter over at some length, and he told her that if she deeded the place to him he would never take it away from her, but she and his father should have it for a home as long as they lived; that he never asked her to make the deed, but she voluntarily offered to do so; that at her request they went to Albany, and she had Redfield prepare the deed, and she signed it, and it was delivered to him; that he did not ask Redfield to make the deed, but it was almost prepared when he came into the office; that he and his mother talked over at the time the consideration which should be named in the deed, and it was agreed that the amount due him, with interest, was about $3,000, and that amount was inserted in the deed; that she was to remain in possession of the land during her lifetime; that she did not want the deed recorded, because she said it would make trouble between herself and her husband, and he agreed not to record it, and would not have done so had the plaintiff not attempted to sell the land.

Upon this state of the testimony a court of equity cannot cancel and annul the deed in question, whatever the moral aspect of the case may be. There is no sufficient proof of fraud or undue influence to justify it in so doing. The plaintiff was in full possession of her mental faculties at the time the deed was executed, and fully competent to transact business. Her testimony in relation to the transaction is uncertain and indefinite, and is flatly contradicted by the defendant. Out of all the contradiction and confusion, however, stands the deed, solemnly executed by her, conveying the property in question to her son. From her own testimony she was negligent and careless in signing it without reading or having it read to her or making some inquiry as to its contents. There is no testimony that the defendant made any representations to her at the time as to the nature or character of the instrument, or that he attempted or endeavored to deceive her in any way. There is no proof that he caused the instrument to be prepared, or that it was prepared at his suggestion. Its execution was not induced by any fiduciary or confidential relation between the parties, nor by reason of any special relation of trust or confidence.

3. The mere fact that they were mother and son would not be sufficient to avoid the deed, although it might demand a closer inspection of the testimony than if the transaction had been between strangers. There is no evidence of any special confidential relation between the plaintiff and her son, nor that she particularly relied upon him in any way. He had not been living regularly at home for about three years before the execution of the deed, and the farm had been managed and the business thereof transacted by other parties.

4. Nor is the purchase price so inadequate as to afford ground for relief. The amount due the defendant for labor and services was shown to have been about $3,000, while the fee of the land was worth $6,400. But as plaintiff was to retain the use and occupation thereof during her lifetime, it is doubtful whether the reversion was worth more than the amount due the defendant. Mere inadequacy of consideration is not a ground for avoiding a deed, although it may be evidence of fraud in connection with other circumstances sufficient for that purpose.

5. It is also immaterial that the transaction may have been unwise on the part of the plaintiff, or even improvident. She was in a position to act and judge for herself, and unless the proof shows that she was deceived by her son in substituting one paper for another, which does not appear, she fully understood, or could by the exercise of ordinary care have understood, the nature of the transaction and the character of the instrument she was signing.

It is insisted that there is no sufficient allegation in the pleadings to support the decree reforming the deed so as to vest a life estate in the plaintiff. Perhaps this would be true if this were a suit for that purpose, but the decree in that regard is in favor of the plaintiff, and she cannot complain if the defendant is satisfied therewith.

It is also urged that the court erred in admitting in evidence the deposition of a Mrs. Allen, but that question is immaterial, because without the testimony of Mrs. Allen the decree would have to be affirmed.

The decree of the court below will be affirmed.    AFFIRMED.