Argued October 8, decided October 27, 1908.

## WAYMIRE *v.* SHIPLEY.

[97 Pac. 807.]

MORTGAGES—VACATING JUDGMENT—DECREES—"JUDGMENT."

1. Under Section 59, B. & C. Comp., permitting a defendant, against whom service of summons by publication is ordered, to defend after judgment upon good cause shown, and Section 396, providing that Chapter 5, which includes Section 59, shall apply to suits in equity, the term "judgment" includes "decrees," so that a decree of mortgage foreclosure, based on service by publication, may be vacated, and the defendant therein allowed to defend.

MORTGAGES—FORECLOSURE BY ACTION—DECREE—VACATING.

2. Where a decree foreclosing a mortgage was properly vacated under Section 59, B. & C. Comp., permitting a defendant, against whom service by publication is ordered, to defend after judgment upon good cause shown, an order confirming the sale under the vacated decree, if made before the entry of another decree of foreclosure upon the facts thereafter found, would be void, and would confer no rights upon the purchaser.

JUDGMENT—DEFAULT DECREE—TIME FOR TAKING DEFAULT—PREMATURE ENTRY—EFFECT.

3. Where an order for service by publication of the summons in mortgage foreclosure proceeding was made March 6th, and the complaint was not filed until March 31st and default for failure to answer was taken on April 2d, the default was erroneously and prematurely entered, and the decree was void.

JUDGMENT—BY DEFAULT—PREMATURE ENTRY—EFFECT.

4. Where a default decree on a mortgage foreclosure was void as being prematurely entered, defendant could have it set aside, and, having tendered his answer before default was legally entered, was entitled to defend.

APPEAL AND ERROR—REVIEW—SCOPE—REASONS FOR DECISION.

5. An order setting aside a default decree for insufficient reasons was not error, where the decree was properly set aside as being void on other grounds.

APPEARANCE—JURISDICTION OF PERSON—VOLUNTARY APPEARANCE.

6. Where defendant, against whom service by publication was had, appeared after judgment, and asked to have judgment set aside, and for leave to defend, by his voluntary appearance he submitted to the jurisdiction of the court for a trial on the merits of the defense set up.

PATENTS—ASSIGNMENTS—SALE OF PATENT RIGHTS—MISREPRESENTATIONS—EXPRESSIONS OF OPINION.

7. Statements by plaintiff, when he assigned patent rights in an instrument to defendant, that it was an instrument of great commercial value, intended for the use of all mechanics, and for which there would be a great demand; that it would do the work of 10 other instruments then used, and the purchaser could easily make a certain sum by selling it—were mere expressions of opinion, the instrument being before them when the sale was made, and its merits and defects equally open to both parties, neither of whom were experienced mechanics.

MORTGAGES—ACTION TO FORECLOSE—DEFENSES—FRAUD—BURDEN OF PROOF.

8. In an action to foreclose a mortgage, the execution of the note and mortgage being admitted, the burden was on defendant to show fraud in their execution, by establishing every necessary element thereof by clear and explicit evidence.

PATENTS—SALE OF PATENT RIGHTS—ACTION FOR PRICE—FAILURE OF CONSIDERATION—BURDEN OF PROOF.

9. In an action to foreclose a mortgage to secure the purchase price of certain patent rights, the defense being misrepresentation as to the value of the patented article, the issuance of the patent, and ownership and possession thereof by the seller, were prima facie evidence of its utility, and the burden was upon the mortgagor to show its uselessness by clear and strong evidence.

MORTGAGES—CONSIDERATION—FAILURE.

10. Where plaintiff assigned to defendant patent rights of an instrument for a certain state, with the privilege of perchasing the instruments, when manufactured, from a certain company at the same price plaintiff paid for them, the privilege of purchasing the instruments from the manufacturer was a condition subsequent, and not a condition precedent, to the validity of the mortgage given for the purchase money, so that the failure of the manufacturer to furnish the instruments at that price did not invalidate the mortgage.

MORTGAGES—VALIDITY—MISREPRESENTATION—STATEMENTS OF OPINION.

11. Where statements of the seller of patent rights as to the value and merit of the patented article were mere statements of opinion, upon which the purchaser was not entitled to rely, they would not vitiate the mortgage given to secure the purchase price.

SALES—VALIDITY—MISREPRESENTATIONS.

12. To vitiate a contract of sale so that equity will not aid in its enforcement, the misrepresentation must not only relate to a material matter

constituting an inducement to the contract, but to a matter of which the complaining party had no knowledge or means of knowledge, and upon which misrepresentation he actually relied to his injury, and where the means of knowledge are equally open to both parties, and the subject of the sale is open to their inspection, or where he does not in fact rely upon the misrepresentation, the purchaser cannot complain.

SALES — REMEDIES OF BUYER — DEFENSES—FRAUD—RESCISSION OF CONTRACT.

13. As a general rule, one who is induced through fraud to execute a contract of sale, to avail himself of that defense, must act promptly upon the discovery of the fraud, and by retaining the subject-matter of the sale after its discovery loses his right of action.

APPEAL AND ERROR—DISPOSITION OF CAUSE.

14. Though a mere decree confirming an order of sale of mortgaged property was void, the case being tried *de novo* in the Supreme Court, and all the evidence being before it, upon a finding for plaintiff a decree of foreclosure may be entered in the Supreme Court.

MORTGAGES—FORECLOSURE OF ACTION — DECREE — RELIEF — ATTORNEY'S FEES—PROOFS.

15. In an action to foreclose a mortgage, there being no proof of the attorney's fee claimed by plaintiff, the amount of the fee as claimed will not be included in the judgment.

APPEAL AND ERROR—DISCRETION OF TRIAL COURT—ALLOWING COSTS.

16. The trial court having in its discretion denied costs to either party upon setting aside a default decree of foreclosure, its action will not be disturbed on appeal, though decree of foreclosure is rendered on appeal.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. COMMISSIONER KING.

This is a suit to foreclose a mortgage executed by defendants P. A. Shipley and Elizabeth Shipley, his wife, to plaintiff, on lots 1, 2, 7, and 8, in block 35, and lots 1 and 2, in block 38, in University Addition to Salem, Oregon.

Service on the defendants was had by publication of summons, the order for which was made on March 6, 1906, the complaint being filed 25 days later, while a default for failure of defendants to appear was taken against them on April 2d following, and thereafter, on May 28th, a decree was entered in plaintiff's favor for $2,145, with costs and attorney fees, directing a sale of the lots in satisfaction of the mortgage thereon. .

On July 31st, following the entry of the decree, defendants moved that the default be opened, and that they

be permitted to answer and defend, basing the motion therefor upon P. A. Shipley's affidavit, which purported to state facts showing "mistake, inadvertence, and excusable neglect," which motion was allowed.

Defendants thereafter answered, admitting the execution of the notes and mortgage set out in the complaint, but denied the other averments, and as an affirmative defense, charge want of consideration by reason of alleged fraud in the making of a certain sale to defendant, P. A. Shipley, of a patent right, said to be worthless, concluding with a prayer to the effect that the instruments involved be declared null and void, and the suit be dismissed.

The reply denies the affirmative averments, except the execution of the written instruments set out therein, and, as separate and affirmative matter, endeavors to plead that plaintiff is an innocent purchaser and holder of the notes and mortgage involved. The cause was tried before the court, and upon testimony offered, findings of fact and conclusions of law were entered in favor of plaintiff, and a decree entered thereon reciting that the mortgage was foreclosed by an order of the court o̅ May 28, 1906, under which the realty described was, on the 14th of July following, sold at sheriff's sale; that the execution being duly returned satisfied, and no objections thereto having been filed, except those stated in the amended answer, plaintiff was entitled to have the sale confirmed, and it was so ordered.

From this order defendants appeal, and from the order opening the default and setting aside the first decree of May 28, 1906, and permitting defendants to answer, plaintiff appeals.          Modified: Decree Rendered.

For appellant there was a brief and oral arguments by *Mr. Edward D. Horgan* and *Mr. Charles L. McNary.*

For respondents there was a brief over the names of *Messrs. McCain & Vinton, Mr. William H. Holmes* and

*Mr. Webster Holmes,* with oral arguments by *Mr. McCain* and *Mr. Vinton.*

Opinion by MR. COMMISSIONER KING.

1. The first point demanding attention is the error assigned by plaintiff in respect to the order of the court in opening the default and permitting defendants to answer, which, if tenable, disposes of the controversy. Section 59, B. & C. Comp., among other things provides that "the defendant against whom publication is ordered, or his representaitves, * * may, * * upon good cause shown and upon such terms as may be proper, be allowed to defend after judgment, and within one year after the entry of such judgment on such terms as may be just. * *" And the term "judgment," as there used, includes decrees: Words & Phrases, p. 3835; see, also, Section 396, B. & C. Comp.

2. It is thus apparent that, if sufficient showing was made by defendants, the order setting aside and vacating the decree and permitting them to answer and defend was proper; and when once properly set aside, whether upon the showing made, or for other sufficient reasons disclosed by the record, the court was without power thereafter to enter a decree confirming any sale made under the vacated decree, and only by entry of another decree upon the facts thereafter found could any rights in the property be acquired by the purchaser under the foreclosure sale.

3. It is disclosed by the record that the complaint was not filed until March 31, 1906, long after procurement of the order for publication of summons, but the default for failure to appear or to plead was taken but two days later. It is obvious, therefore, that since no complaint was filed at the time the order for publication of summons was procured, and the default was based on a failure to answer within the time thus demanded, the default was

erroneously, as well as prematurely, entered, and the decree thereon accordingly void.

4. Defendants were therefore entitled to have the same set aside, and, having tendered the answer upon which the cause was tried, before default was legally entered were entitled to defend.

5. It follows that the order vacating the decree, although entered on other and insufficient reasons, was proper, and no error can be predicated thereon.

6. Defendants, however, by their voluntary appearance, submitted to the jurisdiction of the court (*Mayer* v. *Mayer*, 27 Or. 133: 39 Pac. 1002), leaving for determination the points urged by defendants on the merits.

7. Defendants assert that the consideration for the notes and mortgage consists of the sale of a right to sell a patent right, with the privilege of selling the tool patented in the State of California. The instrument alluded to is termed a "mitre square" or "caliper rule," the patent to which was obtained by plaintiff's husband, Albert A. Waymire, who sold it to P. A. Shipley for $2,000.

Defendants admit the execution of the notes and mortgage, and, as an affirmative defense, charge fraud in the sale thereof, a summary of which charges are: That at and before the sale and execution of the notes and mortgage, Albert Waymire, the owner of the patent, falsely, fraudulently, deceitfully, and with intent to deceive defendants, represented that the patent was a mitre square or caliper rule, of great commercial value, intended for the use of all mechanics, and that it was a useful instrument and invention, for which there would be a great demand, and one which every mechanic and architect in California would need; that the instrument would do the work and take the place of 10 other instruments then in use, insuring rapid building; that the purchaser could take the patent to California, sell it for $3,000, and easily make $2,000 from the profits arising from its sale; and

that the instruments patented were being manufactured by the Streator Metal Stamping Co. in Illinois, from which he could purchase them at the same rates, figures, and prices as the inventor could, at the same time executing to him (Shipley) written authority to make such purchase, and presenting him with 200 tools made under the patent then in Waymire's possession.

8. The execution of the notes and mortgage being admitted, the burden of proving the fraud in their execution was upon the defendants, and it devolved upon them to establish every necessary element thereof by clear and explicit evidence: 6 Enc. Evidence, 8; *Keel* v. *Levy,* 19 Or. 450 (24 Pac. 253). Defendants have not brought themselves within any exception to this rule.

9. The written assignment of the patent and contract set out in the answer and admitted by the plaintiff, taken together, clearly and specifically convey to Shipley the letters patent to the device to and in the State of California, subject only to certain restrictions as to the price for which the articles might be sold, in the event Shipley desired to sell them at retail, with a further grant of a right and privilege to purchase and receive the instruments from the Streator Metal Stamping Co., when manufactured, at the same rate and prices paid for the goods and articles by Waymire. That the patent was duly and regularly issued, and that the seller was the owner and holder thereof, is not questioned, which, in itself, was *prima facie* evidence of its utility, to overcome which, clear and strong evidence to the contrary, is necessary: 22 Am. & Eng. Enc. Law (2 ed.), 334, 335; *Reckendorfer* v. *Faber,* 92 U. S. 347 (23 L. Ed. 719). When, therefore, it is disclosed that the patent was in fact issued, the burden of proving its uselessness was cast upon defendants.

The testimony discloses that, among the witnesses called as to the utility of the invention, Charles Waymire,

although a brother of the owner and seller of the patent, was a disinterested witness, in whose word defendants at the trial manifested implicit confidence; that he testifies that while stopping with the defendants, and before the arrival of Albert Waymire, he first showed Shipley a sample of the instrument, whereupon Shipley became interested, and, immediately upon the arrival of his brother, sought to purchase from him a right to the patent for the State of California; and that while he (the witness) had considerable confidence in the invention, he had not as much faith therein as did Mr. Shipley, and accordingly advised defendants, prior to the sale, against giving the mortgage as security for the right to the patent. As to the utility thereof, we think the witness practically states the real situation, in respect to which he says:

"Q. You have testified you are a mechanic. What is the fact about this tool here being such an instrument? As a matter of fact, it can be used for the other different tools that your brother claimed for it?

A. Well, it would be a matter of my own opinion.

Q. That is what I want you to state.

A. Well, to start out with, just suppose I had that in my pocket and wanted to square a board, and didn't have a square, if that die was made perfect, there is no reason why that could not be set perfectly square. The die was imperfect. The tool there is evidence of itself. If it was a perfect made tool I could use it for a square. My idea is that thing is more to take the place of different tools for a man who has not got already a kit of tools. If I wanted to use a compass and had that, I could strike a circle. If I wanted to use a gauge to split a board, I could do it that way. If I wanted a caliper rule, I could get it as Mr. Wildhart showed you here. I can use that in place of a caliper (shows how). It is a very good substitute, where you haven't got all these tools, is my honest opinion. While a real, genuine, thorough mechanic would like to have that in his kit, he would not rely upon it very much. That is my idea of it. While I don't think as much of it as some men do, it is not worthless by a whole lot."

An examination of all the evidence adduced reveals that the owner of the patent manifested no special desire to sell the right to Shipley, and even told him that, under the circumstances, he thought it would be better for both if Shipley would not buy it; that he could take the right to California and sell it himself; but notwithstanding the advice of Chas. Waymire, and the disposition of Albert not to sell to defendant, the latter insisted on purchasing it. Albert Waymire had sold the right in the State of Washington for the agreed price of $2,000, and subsequent to the deal with defendant negotiated a sale to parties in Boise, Idaho, of all the remaining territory for $25,000, failing only by reason of the contemplated purchasers not being able to furnish the security for the purchase price; and, as a circumstance indicative of the confidence had in his invention, he voluntarily returned to the Idaho purchasers their notes, and declared the sale forfeited on account of the security not being furnished.

10. The representations made at the time of, and leading up to, the sale were merely expressions of opinion. Samples of the instrument were before the parties and examined by all. Its merits, or demerits, as the case may be, were as susceptible of determination by one as by the other. Neither of them appear to be mechanics of extraordinary ability, or to have been following that line as a business, as both claimed to be ministers of the gospel, and were devoting most of their time to that work. Waymire told defendant that he thought the latter could take the patent to California and sell the right in that state and make $1,000, but if he saw fit to sell the instrument patented in place of the right purchased, he would be quite certain of making $2,000, and that the tools could be purchased through the Streator Metal Stamping Co., to which purchase he would and did assent. In reference to this agreement the evidence does not disclose any failure on the part of Waymire to comply

therewith. The company may have failed to do its part, but it is not shown that such failure was through any fault of the inventor. Moreover, the agreement giving defendant the privilege of purchasing the same articles from the Streator Metal Stamping Co. has but little bearing on this case. Its provision in this respect was merely a condition subsequent, and not a condition precedent, to the validity of the mortgage.

11. The sale of the patent right for the state named, together with the agreement to permit the purchaser to buy from the company the tools as manufactured, constitute the consideration for which the notes and mortgage were given, which consideration defendants received; and, though the inventor may have been mistaken in his opinion as to the merits of the tool patented, the representations based thereon were not such as to entitle the purchaser to rely thereon, and accordingly were insufficient to vitiate the instruments executed in payment of, or to secure the payment of, the purchase price: 2 Kent, 671; *Little* v. *Allen,* 56 Tex. 133; *Bridges* v. *Robinson,* 2 Tenn. Ch. 720, 724; *Collins* v. *Jackson,* 54 Mich. 186 (19 N. W. 947) ; *Bain* v. *Withey & Ottman,* 107 Ala. 223 (18 South. 217) ; *Bondurant* v. *Crawford,* 22 Iowa, 40, 47; *Kimball* v. *Bangs,* 144 Mass. 321 (11 N. E. 113).

12. The rule governing contracts of this class is clearly and concisely stated by Mr. Justice FIELD as follows:

"The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both par-

ties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by over-confidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained": *Slaughter's Admin.* v. *Gerson,* 13 Wall. 379, 383 (20 L. Ed. 627).

"A party," says the Supreme Court of Iowa, "cannot make the mere opinion of another a ground of fraud, especially where this opinion relates to the value of an article, or to what will happen in the future, in relation to which each party has, or is supposed to have, equal opportunities to know or judge for himself": *Bondurant* v. *Crawford,* 22 Iowa, 40, 47.

13. Again, it appears that after the purchase was made by Shipley he went to California, and, according to his statement, although he was continuously but unsuccessfully attempting to sell the tools given him, no complaint was made with respect to the merits of the right purchased, or efficiency of the tools manufactured, until after this suit was instituted, and, even then, it is conceded that defendants had contemplated deeding the property to Waymire for the purpose of saving him the expense of foreclosure. Nor until advised by counsel to the effect that he might have the mortgage canceled by a suit in equity, did he think of questioning the validity of the transaction. It is the general rule that any person who has been induced through fraud to execute a contract of any kind, in order to avail himself of that defense, should act promptly upon the discovery of the deception. "He cannot deal with the article purchased after discovery

of fraud in a sale, without losing his right of action":
2 Kent (10 ed.), 660-664. Measured by the rules announced, defendants have failed to establish, by a preponderance of evidence, the fraud and deception complained of, for which reason plaintiff is entitled to have the mortgage foreclosed, as demanded in the complaint.

14. But since the sale of the mortgaged premises was made under a vacated decree, and without a decree of foreclosure having been subsequently entered directing the sale of the mortgaged property, etc., the proceedings thereunder were void, and the court erred accordingly. However, the cause being tried *de novo* in this court, and all the evidence being before us, a decree of foreclosure may be entered here: B. & C. Comp, § 555; *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135).

15. But we find no proof on the issue respecting attortorney fees claimed, without which no judgment can be entered therefor: *Bradtfeldt* v. *Cooke,* 27. Or. 194 (40 Pac. 1: 50 Am. Rep. 701) ; *Wright* v. *Invest. Co.* 49 Or. 177 (89 Pac. 387). The decree appealed from should therefore be modified by setting aside the confirmation of the sale made under decree of May 28, 1906, and one entered here in conformity with this opinion.

16. The circuit court having, in the exercise of its discretion, denied costs to either party, its findings in that respect will not be disturbed, but, an appeal having been essential to a full protection of defendants' rights, they are entitled to their costs on this appeal.

MODIFIED : DECREE RENDERED.