Argued June 18, affirmed July 14, 1925.

## LENA LONG *v.* SMITH HOTEL COMPANY et al.

### (237 Pac. 671.)

**Contracts—Law will not Inquire as to Adequacy of Consideration.**

1. The law will not enter into an inquiry as to adequacy of consideration, as such question is matter for determination of contracting parties, though a consideration grossly inadequate may become evidence of fraud.

**Fraud—Never Presumed.**

2. Fraud is never presumed, but must be pleaded and established by greater weight of evidence.

———

1. Inadequacy of consideration as defense to action on contract, see note in 56 Am. Rep. 332. See, also, 6 R. C. L. 678.
2. See 12 R. C. L. 424.

**Sales—Bill of Sale Executed Without Reading Valid When not Obtained by Fraud.**

3. Where plaintiff, a business woman of more than ordinary intelligence, signed bill of sale transferring ownership of furniture to defendant without reading it, as part of settlement between her and chattel mortgagee, who was also her landlord, both parties to transaction being represented by attorneys, *held*, that in view of Sections 713, 798, subdivision 3, Or. L., and Section 799, subdivision 19, such bill of sale is valid in absence of fraud.

**Chattel Mortgages—Answer Held to Sufficiently Plead Title Under Bill of Sale.**

4. In suit to redeem property of which plaintiff alleged defendants were mortgagees in possession, answer *held* to plead one defendant's title under bill of sale sufficiently to require plaintiff to plead fraud if relied on.

See (1) 13 C. J. 365, 366. (2) 27 C. J. 28, 44, 45, 62. (3) 13 C. J. 370. (4) 11 C. J. 745 (Anno.).

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

This suit was instituted by the plaintiff for the purpose of determining the title to certain furniture and furnishings in the Congress Hotel, Portland, Oregon. Both the plaintiff and the defendants claim title to the property, which had been subject to a lien by chattel mortgage from which the plaintiff sought to redeem it. She claimed that the defendants were mortgagees in possession, while the defendants asserted that, for a valuable consideration, the plaintiff had conveyed the title to the property to defendant A. F. Smith, who held it in trust for his mother, Hedwig Smith, one of defendants, and that the plaintiff was indebted to defendant Hedwig Smith for rents collected from guests, and for furniture, in the sum of $4,389.50. The court decreed that the plaintiff was not entitled to redeem the property and that the defendants were not entitled to recover judgment for $4,389.50, or any portion

3. See 12 R. C. L. 386.

thereof; that A. F. Smith took the title to the property for value, in trust for Hedwig Smith, one of his codefendants, and that she is the sole and exclusive owner of that property. The court further decreed that the two chattel mortgages on the property had been satisfied by merger. The plaintiff appeals.                              AFFIRMED.

For appellant there was a brief and oral argument by *Mr. F. K. Masters* and *Mr. H. F. McInturff*.

For respondents there was a brief and oral arguments by *Mr. W. P. LaRoche* and *Mr. J. B. Ofner*.

BROWN, J.—The Congress Hotel was owned by the Smith Hotel Company and, in 1912, was leased by plaintiff, Lena Long, for three years, Henry Jennings guaranteeing the payment of the rent. On October 20, 1915, plaintiff's rent being in arrears in the amount of $6,000, for payment thereof she executed to the defendant Smith Hotel Company a promissory note, secured by a chattel mortgage upon the furniture and furnishings of the hotel, in the amount of $6,000, bearing interest at 6 per cent per annum, due October 20, 1917. This mortgage was acknowledged and recorded and, by mutual consent, the time of payment was subsequently extended until October 20, 1918. On October 22, 1915, she likewise executed to Henry Jennings & Sons, from whom she had purchased the furniture and furnishings, a second mortgage for $5,000 upon the same personal property. On October 20, 1915, the date of the execution of the six thousand dollar mortgage by plaintiff to secure the back rental, the Smith Hotel company again leased the building to plaintiff for a period of two years from date, but subse-

quently the period was extended until November 1, 1918. On October 25, 1918, the lease was canceled and terminated by mutual consent of the parties, the defendant Hedwig Smith, assignee of the six thousand dollar mortgage taking possession of the property.

The complaint avers that defendant Hedwig Smith took possession of the property covered by the chattel mortgage as mortgagee in possession and that at that time the sum of $600 had been paid upon the principal sum of $6,000; that the value of the use of the mortgaged property was $600 per month, and that the plaintiff was entitled to redeem that property but that the defendants denied her such right.

The defendants allege that on March 1, 1917, the Smith Hotel Company, for value, transferred to Hedwig Smith the note for $6,000 and the mortgage securing the same and on June 29, 1917, conveyed the Congress Hotel to Hedwig Smith; that on October 13, 1917, Hedwig Smith, assignee, extended the lease to November 1, 1918. They aver:

"That during October, 1918, the plaintiff was unable to continue as lessee of the Congress Hotel * * and was unable to pay any rent and was unable to continue the management thereof and was unable to pay the said $6,000 note and mortgage, or any portion thereof, in accordance with its terms or otherwise, either with respect to principal or interest, and was unable to pay the said note for $5,000, or any portion thereof, or in any manner comply with the terms or conditions of the said note and mortgage for $5,000, or any portion thereof."

The defendants assert that on October 25, 1918, there was a complete settlement between the plaintiff and defendant Hedwig Smith with respect to all their business relations arising under the lease of the Congress Hotel; and they aver, among other things:

"For good and valuable considerations then passing and flowing between the parties, the lease to said Congress Hotel was canceled and terminated by mutual consent of both parties, and the possession of the said hotel building and the furnishings and furniture then in said building was delivered by the plaintiff to the said Hedwig Smith; and it was agreed that the plaintiff waived all claims of every kind against the said Hedwig Smith for advance rentals under the lease; and it was further agreed for good and valuable considerations that the said Lena Long was to have no further interest in said premises or in said lease or in said property covered by said chattel mortgage; and the said plaintiff then and there, for good and valuable considerations, did surrender possession of all the furniture and furnishings then in said hotel to the defendant Hedwig Smith, and did further part with all of her right, title and interest in and to said furniture and furnishings, and every portion thereof, including all of her right of redemption, and all of her equity of redemption, and the plaintiff did then and there, in consideration of her being relieved of all further liability under said lease, and in consideration of her being relieved from any personal liability upon the first note and mortgage for $6,000, * * bargain, sell, and transfer to the said defendant A. F. Smith all of her interest in and to all of said personal property, and by an instrument in writing properly signed and executed according to law, transferred said property to said A. F. Smith."

They aver the recordation of the bill of sale in Book 41, page 57, Miscellaneous Records of Multnomah County, Oregon. They further aver that on August 12, 1919, Henry Jennings & Sons, for a valuable consideration, transferred to Hedwig Smith the note secured by the second mortgage upon the furniture and furnishings of the hotel.

The plaintiff denies that she made, executed or delivered to the defendant A. F. Smith, or to any other

person, a bill of sale or conveyance of the furniture and furnishings of the Congress Hotel, or of her right of redemption of any of the personal property described in the mortgages.   She alleges:

"If any instrument purporting to be any such conveyance was in fact executed by plaintiff, the same was executed by her without any knowledge on her part or notice to her of its contents, and was executed wholly without her knowledge or intention upon her part to execute or deliver any such instrument."

She further alleges lack of consideration for the "alleged and pretended bill of sale or conveyance."

The record in this case discloses that the plaintiff, Mrs. Lena Long, is an intelligent business woman, and that she has been engaged in the hotel business since 1900; that in 1911 she commenced negotiations for a lease of the Congress Hotel, which was then in the course of construction; that her first lease became effective in 1912 and expired in 1915; that during this period of time she paid a rental of $1,325 per month and that by the later lease the rental was reduced to $750 per month; that the furniture and furnishings of the hotel were purchased by Mrs. Long and placed in the hotel at the commencement of her lease and at the time of the trial had been used therein for about six years, but that there had been some replacements of the original personal property.   As to the condition and value of this furniture at the time of the alleged transfer to A. F. Smith, there is a sharp conflict in the evidence.   According to the testimony of some of the witnesses, the plaintiff has received full consideration for the furniture and furnishings of the hotel. On the other hand, there is testimony tending to show that the property was worth several thousand dollars more than the amount of her obligations.

1. Answering plaintiff's contention that the defendants have received the better of the bargain: It is beyond the power of a court of equity to aid the plaintiff in this case. That a valuable consideration passed from Hedwig Smith to Lena Long for the property involved there is no question. And it is an elementary principle that the law will not enter into an inquiry as to the adequacy of a consideration: 1 Williston on Contracts, § 115; 13 C. J. 365. The question of the sufficiency of the consideration was a matter for the determination of the contracting parties.

"So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise is generally immaterial in the absence of fraud. The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contract they may please, so long as there is no fraud or deception or infringement of law. Hence the fact that the bargain is a hard one will not deprive it of validity." 13 C. J., pp. 365, 366.

However, a consideration grossly inadequate may become evidence of fraud.

Our Code provides that the following presumptions shall be deemed conclusive:

" * * The truth of the facts recited from the recital in a written instrument, between the parties thereto * * ; but this rule does not apply to the recital of a consideration. * * " Or. L., § 798, subd. 3.

Section 713 of our Code provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can

be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 717, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud."

In the case at bar neither mistake nor fraud is pleaded.

2. "That private transactions have been fair and regular" is a disputable presumption: Or. L., § 799, subd. 19. Fraud is never presumed. It must be pleaded and established by the greater weight of the evidence: *Black* v. *Irvin,* 76 Or. 561 (149 Pac. 540); *Benson* v. *Johnson,* 85 Or. 677 (165 Pac. 1001, 167 Pac. 1014).

In *Wimer* v. *Smith,* 22 Or. 469, 486 (30 Pac. 416, 421), Mr. Justice Lord thus stated the rule:

"On a charge of fraud, the burden of proof is on the party alleging it. The defendants must clearly and distinctly prove the fraud or false representations they allege. The law in no case presumes fraud. The presumption is always in favor of innocence, and not guilt. Fraud must be proved, but it may be proved by circumstances from which no other inference but that of fraud can be drawn. * * Circumstances of mere suspicion will not warrant the conclusion of fraud. * * 'The evidence of it,' Chancellor Kent said, 'must be clear, strong, and satisfactory.' "

In the case of *Riddle* v. *Isaacs,* 97 Or. 404, 409 (192 Pac. 398, 400), Mr. Justice Burnett wrote:

"In order to be a good pleading of fraud, the representations claimed to be false must be stated. The

truth must be averred, so that the court may determine the falsity of the representations alleged to be fraudulent. It must appear that the individual making them knew they were false, and that he intended thereby to perpetrate a fraud; and, finally, that the party seeking to be relieved from the fraud relied upon such representations (numerous local citations)."

3. It appears from the testimony that the plaintiff signed the bill of sale without reading it. Both parties to the transaction were represented by attorneys. On being requested to sign, the plaintiff turned to her attorney and asked him if it was all right "for me to sign these papers." He replied: "I guess it is." As to the liability of one who signs a paper without reading it, see *Powers* v. *Powers,* 46 Or. 479 (80 Pac. 1058); *Welch* v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280); *Lovell* v. *Potts,* 112 Or. 538 (207 Pac. 1006, 226 Pac. 1111).

In *Manley* v. *Smith,* 88 Or. 176, 190 (171 Pac. 897, 901), this court, after referring to the case of *Powers* v. *Powers, supra,* said:

"That the instrument which a person in the possession of his faculties signs without reading or reads carelessly binds him is established by the following authorities (many citations)."

But this court has held that the failure of a party to read an instrument is not conclusive evidence, as a matter of law, that a mistake was due to his negligence: *Welch* v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280).

"It is absolutely essential in pleading that a signer of a paper was fraudulently misled as to what was being signed, to show that such signer was free from negligence in the matter." *Brown* v. *Feldwert* (syl.), 46 Or. 363 (80 Pac. 414).

To the same effect is *Foster* v. *University Lumber Co.,* 65 Or. 46 (131 Pac. 736).

The plaintiff has not pleaded facts that release her signature from the bill of sale. Hence, that instrument is valid and transfers a valid title from plaintiff to Smith.

The action of the parties throws some light upon the situation. Three years and three months elapsed after the transaction, whereby the defendants claim that the plaintiff transferred the furniture and furnishings of the hotel to Hedwig Smith, before the plaintiff asserted any right therein. Upon the other hand, upon obtaining possession of the hotel and of its furniture and furnishings Hedwig Smith immediately spent something like $25,000 in refurnishing the hotel and in replacing a portion of the furnishings which she claims to have purchased from the plaintiff. While the testimony is contradictory as to some of the surrounding circumstances preceding the execution of the bill of sale, yet we have before us a writing solemnly executed by the plaintiff, conveying the furniture and furnishings of the hotel to A. F. Smith. The execution of that writing was not brought about by any confidential or fiduciary relation of the parties or their attorneys. We have already observed that the plaintiff is a business woman of more than ordinary intelligence. Moreover, she was in full possession of all her faculties at the time she placed her signature to the bill of sale. Under this state of facts, the bill of sale must be allowed to stand as executed, because when parties have reduced their covenants to writing, that writing must be held to contain all the terms of the covenants in the absence of fraud or mutuality of mistake.

4. As an excuse for her failure to plead fraud, the plaintiff asserts that she had no knowledge that the

defendant Hedwig Smith claimed to hold title to the personal property under the terms of the writing referred to. To this we reply that the answer herein fully informed the plaintiff of the nature of the defendant's written evidence of her title to the personal property and the claim of rights thereunder.

This case is affirmed without costs to either party in this court. And it is ordered that the promissory notes and the mortgages given to secure the payment thereof be canceled and satisfied of record.

AFFIRMED.

MCBRIDE, C. J., and BEAN and BELT, JJ., concur.