Submitted on briefs June 29, affirmed December 7, 1926.

BLANCHE TODD ET AL. v. J. L. HANNA ET AL.

(251 Pac. 255.)

**Deeds—In Grantor's Cancellation Suit, Evidence Held not to Require Finding That Grantees Obtained Deed by Misrepresentation or Fraud.**

1. In suit by grantor to cancel her deed, as obtained by misrepresentation as to value of property conveyed and outstanding liens thereon, evidence *held* not to require finding that fraud was practiced.

**Fraud—Fraud is not Presumed.**

2. Fraud is never indulged as a legal presumption.

Fraud, 27 **C. J.**, p. 44, n. 57, p. 45, n. 58, p. 64, n. 92, p. 67, n. 14.

From Multnomah: WALTER H. EVANS, Judge.

In Banc.

Plaintiffs filed this suit to cancel a deed executed and delivered by Blanche Todd to J. L. Hanna, upon the ground of fraud. Plaintiff Blanche Todd is the mother of N. M. Todd (Nellie M. Todd) and W. F. Todd, her coplaintiffs. The defendants are husband and wife. The land involved is situate on the corner of East Twelfth and Stark Streets, Portland, Oregon, and the building located thereon is known as the Todd Apartments. For the purpose of taxation, the lot is assessed at $2,000 and the building at $1,800. The appraisal committee of the Portland Realty Board found the value of the land to be $3,000 and that of the building $10,000. The record reveals the following liens against the property: Mortgage for $5,500 given by J. M. Crowley and wife to Fred H. Martin; a second mortgage for $2,000 given by N. M. Todd to Fred H. Martin; a mortgage for $5,740 given by N. M.

2. See 12 **R. C. L.** 424.

Todd to Jesse L. Linn; a mortgage for $335.35 given by N. M. Todd to the Citizens' Bank, Portland; delinquent taxes, including interest and penalty, $789.35; lien judgments and insurance premiums paid by Fred H. Martin, $225; judgment of E. M. Chandler against N. M. Todd, $893.17; judgment of F. J. Berger against N. M. Todd, $201.50; city lien, principal and interest, $568; material lien, $25.86.

Blanche Todd acquired title to this property from one Mrs. Crowley by the exchange of an acreage tract, title to which stood in her name. Thereafter she conveyed the property to one Richmond, and Richmond conveyed to Nellie M. Todd, who in turn deeded it to her mother, Blanche Todd. Blanche Todd later reconveyed to Nellie M. Todd, who again deeded the property to her mother, and, on April 29, 1922, Blanche Todd conveyed to J. L. Hanna for $150. This last-named deed is the deed that plaintiffs seek to cancel.

The plaintiffs contended that the equitable title to the property was in Nellie M. Todd and her brother, W. F. Todd, and that, at the time defendant J. L. Hanna procured the deed from Blanche Todd, he knew this to be true. They further contended that Hanna and his agents misrepresented the value of the property and the amount of encumbrances thereon to Blanche Todd for the purpose of fraudulently acquiring title to the Todd Apartments. The court found against their contention, and, after hearing the evidence, filed the following:

"The plaintiff, Blanche Todd, not only admitted that she did not rely upon the statements concerning the encumbrances * * , but further states that, after seeing the list of encumbrances as given by Kindt and others on their visit, * * she went to her counsel, Richardson, to have his counsel and advice, and

furthermore that she took with her the deed from Nellie Todd, and it was upon her attorney's advice that she recorded the same. * * The court is persuaded by two inferences that she (Blanche Todd) actually owned the property: First, had it not been so, Nellie Todd, who at that time worked in the offices of reliable and competent attorneys, her attorneys in this case, would have been the anxious one, and not the mother; and, second, knowing Mr. Richardson, the court infers that he would not have counseled her to have recorded this deed except after inquiry as to her right so to do; and after all is said and done, the deed in controversy in this case was not accepted until the 29th day of April, many days after the first conference with her attorney. The court is satisfied from the testimony that these gentlemen in no way over-reached Blanche Todd,· but, upon the contrary, they were extremely fair with her. She held the check in question from the 29th day of April until the 5th day of May, and the entire scope of the dealings of these men with the women involved in this case as disclosed by the testimony is, in the opinion of the court, entirely above the suspicion of fraud.''

Thereupon, the court ordered that plaintiffs' suit be dismissed, and plaintiffs assign that order as error on this appeal.                              AFFIRMED.

For appellants there was a brief over the name of *Messrs. Skulason & Riesland.*

For respondents there was a brief over the name of *Mr. Henry S. Westbrook.*

BROWN, J.—Mrs. Blanche Todd maintains that her signature to the deed involved in this suit was procured through misrepresentation, in this: That she was led to believe that the paper which she signed was not a deed, but a mere statement that would aid in the collection of the Linn mortgage. About Hanna

and his agents' coming to her home for a settlement, she testified:

"Then Mr. Kindt drew out a paper from his pocket and without unfolding it at all he asked me just to sign that, as it would help them to get their money. Now, mind, he said I would sign that paper, and I maintain now it was—it was graft and misrepresentation, for I had not the least idea that that was a deed; if I would sign that paper it would help them to get their money, and showed me just the line to sign my name on, and I did it. They had no sooner got back to town, I suppose to their office, than the phone bell rang and I heard Mr. Kindt's voice say: 'You be careful that you don't sign any other paper.' Well, that was the first thing that made me feel uneasy lest I had signed something to them that I should not have done, and I feel that they were crafty foxes. * *

"Q. Did they give you a check for something?

"A. They gave me—oh, yes, they said if I would do that, why, they would give me a hundred and fifty. * *

"Q. Did they tell you what the apartment house was worth?

"A. They said that the realty board valued it at about thirteen thousand.

"Q. Did they tell you how much was against it in mortgages and judgments?

"A. Oh, yes, it went up to about nineteen or twenty, I suppose. * *

"Q. * * When you signed that paper, * * what did you think you were doing?

"A. Well, I just thought just exactly what they said, if I signed that paper it would help them to collect. I didn't know enough about deeds or mortgages or anything about it. I didn't know that it went beyond just what they said if I would just sign that paper. They didn't read out anything over to me, I didn't read anything in it, and I thought they were honorable men."

C. E. Kindt testified that he was employed for the purpose of helping to collect the Linn mortgage; that, in the course of his employment, he met Blanche Todd at the office of her attorney, whom he supplied with a statement of the liens against the property; that he later called at the home of plaintiffs and, at Mrs. Todd's request, supplied her with a statement of the encumbrances. He further testified:

"Q. Now, will you tell the court just as nearly as you can what was said (to Mrs. Blanche Todd)?

"A. I took the abstract with me and I wanted Mrs. Todd to know exactly the status of the property. We had gone over that matter once before at Richardson's office, but I had the abstract with me again and I went over this whole matter, these judgments and liens and mortgages with her, showed her how much they amounted to as nearly and closely and as accurately as I could get, and we discussed the value of the property just as we had done down to Richardson's office, and those liens, they were so great in extent, the sum total was so great as compared with the value of the property that there was virtually no equity left there for her at all, absolutely none; if it was foreclosed there would be absolutely none whatever, and Mr. Shears told her that this Linn mortgage had been assigned to him and he was going to collect it; it had been running long enough; there had been nothing paid on it, principal or interest, and that he was considering foreclosing the mortgage, and that Martin probably would do the same thing; and we suggested to her that, under all those circumstances, that Mr. Shears would be willing to give her a little something for her equity, although in reality I didn't think she had any equity there at all.

"Q. Just tell what was said.

"A. To give her a hundred and fifty dollars for her equity in the property.

"Q. What did she say?

"A. She said that she would take it.

120 Or.—3

"Q. What did Shears tell her, if anything, that he wanted her to do for that hundred and fifty dollars? * *

"A. He wanted her to make a deed.

"Q. And what did she say about that?

"A. She said she would. * * We told her that we would come over and see her in a day or so further about it. * * We went back to the office and I drew a deed just in accordance with the conversation which we had had with her the day before or that day. (At this point witness identifies the deed.)

"Q. All right, what did you do with it after you drew it?

"A. Well, after I drew the deed, the next day, on the 29th, Mr. Shears and Mr. Hanna and myself went over to Mrs. Todd's house with that. * * We told her that we had come over with the deed that she had agreed to sign the day before, and I read to her the deed, the four of us being present in her front room. * * Before I read the deed to her I handed it to her for her inspection and reading, and she handed it back to me and asked me to read it for her, which I did."

The next witness was one J. E. Shears, a partner of J. L. Hanna in the real estate business. He testified that he came in contact with Blanche Todd and her daughter in attempting to collect the Linn note and mortgage which had been assigned to him; that, in company with Kindt, he called at the Todd home early one morning to see Miss Todd and her mother, and that he explained the proposition he had to make in regard to the collection as follows:

"I said this mortgage was in my possession and I was there to get some kind of an understanding in regard to a settlement. I said: 'There are three propositions that I have to offer: Either let it go to foreclosure, or settle it up, or deed the property over,' and she could do as she saw best about it."

On a second visit made by Kindt, Shears and Hanna, Mrs. Todd was at home alone, and, concerning what Shears said to her on that occasion, he testified:

"I did say to Mrs. Todd that the encumbrance was far beyond the value of the property * * and I made the same statement that I made to Nellie, that either one of the three ways would be a satisfactory settlement, but we wanted some kind of a settlement. And she said that she thought that the only way out of it was to give a deed to the property; that she didn't think from what she had learned that there would be anything in it for her if it went to a foreclosure. * * I told her then,—we was talking about her giving a deed—I said, 'Mrs. Todd, I don't want you to agree to sign a deed, or sign a deed, until you are thoroughly satisfied that that is the best thing for you to do, because I don't want to take a deed from anyone under the circumstances; but if you don't see fit, if you don't think it is best for you to give a deed, we will have to start foreclosure in order to protect ourselves,' because Martin had told us if we didn't do something that he was going to do something right away, that he wouldn't let the thing drag any longer. * * I told her that I had gone to the expense to have the realty board appraise the property so as to know whether we had anything or would have anything out of it or not in case of foreclosure. * *

"Q. Now, what was said about her making the deed, if anything, on the 28th?

"A. I told her that Mr. Hanna would give her a hundred and fifty dollars rather than to go to a foreclosure, if she saw fit to accept that, and she said she would be glad to do that, that it would be better for her than to let the matter go to a foreclosure. * * We told her that we would have the deed prepared and be back the next—the following day, and close the matter up."

Concerning his return on the following day in company with Kindt and Hanna, he testified:

"Q. Now, just tell the court what happened that day.

"A. We went in, and Mrs. Todd seemed to be very pleased to meet us, and Mr. Kindt presented the statement which she had asked him to do showing the indebtedness. She says: ' * * I want that in order so that I can show it to my children, * * that I can show them exactly what I was up against.' That is the statement that she made, and then the deed was handed to her to read, and she looked at it and handed it back to Mr. Kindt and asked him to read it for her, which he did, every word of it. * * Then we went into the dining room, we all sat at the table, she signed the deed, Mr. Hanna made out the check."

He testified that that was the only paper signed by Mrs. Todd.

Defendant J. L. Hanna gave the following testimony with respect to the execution of the deed by Blanche Todd:

"We went in the house (residence of Blanche Todd) and was there from half to three quarters of an hour, I would judge. Mr. Kindt had prepared a statement for Mrs. Blanche Todd and they went over that, and then he read the deed to Mrs. Todd, and we went from there to the dining-room and signed the deed and witnessed it, and I made out the check, and we all left on nice, friendly terms."

He testified that there was no other paper signed at the Todd home on that occasion.

The testimony in this case fails to support plaintiffs' contention that the equitable title to the real property hereinbefore described was not in Blanche Todd at the time she made the deed to J. L. Hanna. The evidence does not show that W. F. Todd ever possessed any interest in the property, and it is

apparent that, prior to the execution of the deed attacked by plaintiffs, Nellie M. Todd had conveyed to her mother, Blanche Todd, all the interest she ever owned in the Todd Apartments.

1, 2. Now, as to plaintiffs' contention that the deed to Hanna followed as a result of certain misrepresentations made by defendant J. L. Hanna and his agents respecting the value of the property and the encumbrances thereon: The evidence shows that Blanche Todd took independent advice from a competent attorney concerning the extent of the encumbrances and the value of her interest in the Todd Apartments. Be that as it may, it does not appear that Hanna or his agents misrepresented any material fact to Blanche Todd in the course of their dealings with her. Under the proofs adduced, this court is not authorized to find that there was fraud in fact practiced upon Blanche Todd by J. L. Hanna or his agents in the matter of procuring the deed. Fraud is never indulged as a legal presumption.

For the principle decisive of this case, see the following authorities: *Scott* v. *White,* 50 Or. 111 (91 Pac. 487); *Richardson* v. *Griggs,* 51 Or. 222 (94 Pac. 561); *Waymire* v. *Shipley,* 52 Or. 464 (97 Pac. 807); *Coffey* v. *Scott,* 66 Or. 465 (135 Pac. 88); *State* v. *Hyde,* 88 Or. 66 (169 Pac. 775); *Buck* v. *Columbia Agricultural Co.,* 106 Or. 531 (212 Pac. 801); *Castleman* v. *Stryker et al.,* 107 Or. 48 (213 Pac. 436); 1 Bigelow on Fraud, 145; Kerr on Fraud and Mistake (5 ed.), 477. As peculiarly applicable to the case made by plaintiffs herein, see, also, *Long* v. *Smith Hotel Co. et al.,* 115 Or. 306 (237 Pac. 671), and the authorities there cited.

This case is affirmed.                    Affirmed.