Argued January 25, affirmed March 13, damages on affirmance denied April 3, 1923.

## CASTLEMAN *v.* STRYKER ET AL.

### (213 Pac. 436.)

**Fraud—Where Various Items are Purchased for Lump Sum, No Actionable Fraud if the Whole was Worth the Sum.**

1. Where it appears that purchasers of a store paid a lump sum for the business, goodwill, lease and various fixtures, before any recovery can be had for fraudulent representations as to the value of the fixtures, it must be shown that the whole was not worth the lump amount paid.

**Fraud—Fraud Without Damages not Actionable.**

2. Before an action can be maintained to recover damages on account of any false or fraudulent representations, it must be established that there was a misleading of another to his prejudice, though the prejudice need only be slight.

**Fraud—Assertion of Value, Though False, not Actionable.**

3. Where parties are dealing with each other at arm's length, in the absence of any trust or confidential relation, a mere assertion of value by the seller or disparagement of value by the purchaser, although erroneous or false, is not actionable.

**Fraud—Seller or Purchaser may be Obligated to Inform Correctly as to Value.**

4. Where seller or purchaser may put upon the other the responsibility of informing him correctly as to the market value or as to any other fact thereof, such party is not bound to answer; yet, if he does answer, he is bound to speak the truth, and, if prejudice results from a falsehood, it is fraud.

**Fraud—Representations of Past Earnings of Store not Warranties of Future Earnings.**

5. Representations by the seller of a store as to what it had earned in the past are collateral, not warranties of what the purchaser may earn in the future, and, based on such representations, evidence of what the purchaser did earn was not admissible in an action for purchase money in support of defendants' answer setting up damages from fraudulent representations.

**Fraud—Burden of Proof on One Alleging.**

6. The burden of proof is on the one alleging a contract was fraudulently obtained, and whether facts proved amount to fraud is a question for the court; the proof may be either direct or circumstantial, but must be clear, satisfactory, and convincing.

From Multnomah: JOHN McCOURT, Judge.

Department 1.

The plaintiff brought this action to recover on two promissory notes given by the defendants as a part of the consideration agreed to be paid by the defendants to the plaintiff for the purchase of a drug-store from the plaintiff by the defendant, H. F. Stryker.

The defendants, by their answer, admitted the execution and delivery of the notes, but as a defense against their liability thereon they allege that they had been induced to purchase the drug-store by certain alleged false and fraudulent representations made by the plaintiff prior to and at the time of the sale, upon which they relied, and that by reason thereof they had been damaged in the sum of $5,000 over and above the amount then due upon the notes. The reply puts these allegations in issue.

At the close of the testimony the trial court directed a verdict in favor of the plaintiff for the unpaid balance due upon the notes, and from the judgment rendered thereon the defendants have appealed.

The answer sets forth the alleged false and fraudulent representations, and the damages claimed to have been sustained thereby, as follows:

"That on the 21st day of February, 1919, the defendant H. F. Stryker and the plaintiff herein made and entered into an agreement wherein and whereby the defendant agreed to purchase and the plaintiff agreed to sell to said defendant a certain drug store, consisting of the stock, fixtures and good will of the business for which said store the defendants paid to said plaintiff the sum of $12,750. That in accordance with the said agreement the sale was actually made and the possession of the said store was turned over to the defendant H. F. Stryker on or about the 5th day of March, 1919. That defendants paid said plaintiff at the time of the sale the sum of Eight Thousand ($8,000) Dollars, also an additional $1,000 in

sixty days thereafter and for the balance of the purchase price the defendants made, executed and delivered unto the plaintiff their joint and several promissory notes; one for Thirty-five Hundred ($3,500) Dollars due in two years at 6 per cent, and the additional note for Two Hundred and Fifty ($250) Dollars; the notes as herein referred to being the same and identical notes as are set forth by the plaintiff in his complaint in his first and second causes of action therein and which said notes are hereby referred to by the defendants in the answer with the same force and effect as if fully set forth herein.

"That the plaintiff in selling the aforesaid store, consisting of the good will, stock and fixtures, and lease represented to the defendant H. F. Stryker that the good will of the said business was worth the sum of One Thousand ($1,000) Dollars and that in said sale the defendants paid to plaintiff the sum of One Thousand ($1,000) Dollars in purchasing the said store as the good will thereof; that said good will was not in truth and in fact worth the sum of One Thousand ($1,000) Dollars, but defendants alleged the fact to be that said good will was not worth the sum of One Thousand ($1,000) Dollars or any sum at all and that the representations made by the plaintiff respecting the value of the good will of the business were false and untrue and were known by the plaintiff to be false and untrue and that said false and untrue representations so made as aforesaid were made by the plaintiff for the sole and only purpose of misleading and defrauding the defendants and upon which said false and fraudulent representations the defendants were induced to purchase the said store and not otherwise.

"That the plaintiff in making the aforesaid sale represented to the defendants that the said store was earning over and above a monthly salary of Two Hundred and Fifty ($250) Dollars, the sum of Five Hundred ($500) Dollars per month, when in truth and in fact the said store was not earning sufficient to care for the operating expenses after the sum of Two Hundred and Fifty ($250) Dollars per month had

been deducted; that the said plaintiff knew at the time he made the aforesaid representations as to the earning capacity of said store, that said store was not in truth and in fact earning the amount hereinbefore alleged and that said representations so made by the plaintiff to the defendants were false, fraudulent and untrue and were made with the intention of deceiving and defrauding the defendants and that said defendants relying thereon purchased the said store from said plaintiff.

"That it was further represented by the plaintiff to the defendants that a certain soda fountain which was a part and parcel of the fixtures of the said store was worth the sum of Five Hundred ($500) Dollars and was in good working order, when in truth and in fact the said soda fountain was absolutely worthless and of no value at all and was not in good working order and was not in shape to handle the business for which it was intended, and that said representations respecting the value of the soda fountain and the condition were false, fraudulent and untrue and were known by the plaintiff to be false and fraudulent and were made by the plaintiff for the purpose of misleading and deceiving the defendants and that said defendants relying thereon paid the sum of Five Hundred ($500) Dollars for the said soda fountain.

"That the plaintiff sold the defendants as part of the fixtures a certain mechanical peanut machine, which the plaintiff represented was earning not less than the sum of Two Dollars and Fifty Cents ($2.50) per day and for which the defendants paid the plaintiff the sum of Five Hundred ($500) Dollars; that in truth and in fact the said peanut machine did not earn the sum of Two Dollars and Fifty Cents ($2.50) per day and did not earn more than the sum of twenty-five cents per day and was of no value to the defendants; that the plaintiff knew that the said peanut machine was not earning the sum of Two Dollars and Fifty Cents ($2.50) per day, was in truth and in fact false and untrue, and that the aforementioned representations were made with the intent to defraud and deceive the defendants and upon which said state-

ments of the plaintiff the defendants acted in the purchase of the said store and in paying the sum of Five Hundred ($500) Dollars for the aforesaid peanut machine.

"That the plaintiff represented to the defendants that there was in the store certain glass shelving and two gum cases, for which the defendant paid the plaintiff the sum of One Hundred ($100) Dollars; that after investigation it developed that there was not to exceed ten ($10) Dollars' worth of glass shelving in the store and that said gum cases were cheap and inferior in make and were not worth to exceed the sum of ten dollars ($10); all of which the plaintiff knew at the time he sold the said articles to the defendants and which representations as to their value were false and fraudulent and were made for the purpose of misleading and deceiving the defendants and upon which representations said defendants relied and paid therefor the sum of One Hundred ($100) Dollars.

"That as an inducement to cause the said defendant H. F. Stryker, to enter into the agreement, made between himself and the plaintiff on or about the 21st day of February, 1919, the plaintiff falsely and fraudulently represented unto the said defendant Stryker that the said plaintiff had arranged a lease upon the premises, to wit: The drug store, and for a continuance of said lease or a new lease with the landlord; that after the defendant had paid a part of the purchase price of said store, he ascertained that the said plaintiff had no continuation of lease or new lease upon the premises or any lease at all, and that the representations made by the plaintiff to the defendant Stryker concerning the renewal or the execution of a new lease were false and fraudulent and untrue and that said representations were made by the plaintiff to the defendant for the purpose of defrauding and misleading the defendant and that said representations did in truth and in fact mislead and deceive the plaintiff and without which representations, as aforementioned by said plaintiff, said defendant would not have entered into said agreement to purchase said store.

"That by reason of the aforementioned false, fraudulent and deceiving representations made by the plaintiff to the defendants the defendants have been and are damaged in the sum of Five Thousand ($5,000) Dollars.

"Wherefore, defendants having fully answered to the complaint filed herein against them pray the Court that the plaintiff take nothing by his action and that the defendants have and recover judgment against the plaintiff for the sum of Five Thousand ($5,000) Dollars and for defendants' costs and disbursements herein incurred."

AFFIRMED. MOTION FOR DAMAGES ON AFFIRMANCE DENIED.

For appellant there was a brief over the names of *Mr. W. W. Dugan, Jr.,* and *Mr. Henry S. Westbrook,* with an oral argument by *Mr. Dugan.*

For respondent there was a brief and oral argument by *Mr. Nels Jacobson.*

RAND, J.—1. Obviously the pleader, by these averments, intended to allege that the sum of $12,750, which the defendants allege they had been induced to pay to the plaintiff for all of the property, was an aggregate of different amounts which the defendants had paid separately for the different items of property purchased. That is to say, that the defendants paid $1,000 for the goodwill of the business, $500 for the peanut machine, $500 for the soda fountain and $100 for the glass shelving and gum cases, and that these amounts, when added to the amounts paid for the remainder of the property, aggregated the sum of $12,750. But, whether the allegation is that the defendants were induced by the alleged representations to pay $12,750 as a lump sum for all of the property purchased, or that said sum of $12,750 was an aggregate made up of various sums separately

agreed to be paid for the various articles themselves, it appears, from the proof offered by the defendants in their own behalf, that the sale of the property was made under a written contract, and from this contract, and from the testimony offered by them, it is established that none of the things referred to were sold separately, but that everything was sold as a whole, and that the sum of $12,750 agreed to be paid was not an aggregate of charges for separate items, but was a lump sum which the defendants had agreed to pay for the property as a whole. That being so, before the defendants could recover damages on account of any alleged false or fraudulent representation, they were bound to establish that the whole property purchased by them was not worth the sum of $12,750 at the time and place of purchase, because, if the property was worth that sum or more, they could sustain no legal damage even though the alleged representations were false and fraudulent.

2. This is so because fraud without damage is not sufficient to support an action. Before an action can be maintained to recover damages on account of any representation, however false and fraudulent the same may be, it must be established that the person to whom the representation was made has been misled to his prejudice. However, if it be established that the fraud operated to the prejudice of the party to a slight extent only, it is sufficient, as fraud gives a cause of action if it leads to any sort of damage: Kerr on Fraud and Mistake (5 ed.), p. 67.

In this case the defendants wholly failed to establish that the property purchased was not worth the sum of $12,750. They offered no testimony tending to show the value of the property as a whole, nor is there any testimony in the record from which the value of the property can be ascertained or deter-

mined. It was for this reason that the trial court rightly sustained plaintiff's motion for a directed verdict.

However, it is not necessary to base our decision upon this point alone. It appears from defendants' testimony that the defendant H. F. Stryker was an experienced druggist; that he had owned and conducted four different drug-stores before buying the drug-store from plaintiff; that one of these was conducted by him in the City of Portland; that he had been in and around the store for a considerable period of time before purchasing it and was familiar with plaintiff's business and with the goods and property purchased; that all of the property was delivered and transferred to him on March 5, 1919; that he carried on the business of conducting the store for five and one-half months thereafter, and then sold and delivered the property in question to a third party for the sum of $11,100, and that during all of this time he had never made any objection or complaint about any of the matters or things alleged in the answer, and never did make any such complaint or objection until after he had been sued upon the notes in this action. Although Stryker went into the possession of the drug-store on March 5, 1919, and continued the business for five and one-half months thereafter, he admitted that while so owning and conducting the store, on May 25, 1919, he told plaintiff's wife that "he was very much pleased with his purchase, that the business was keeping up well, and was everything that Mr. Castleman had represented."

3. The drug-store in question was located on the corner of Killingsworth and Albina Avenues, in the City of Portland, where the defendant H. F. Stryker admits that he had owned and conducted a drug-store before purchasing the one from plaintiff. He should

therefore have been as familiar with the kind and character of the business and property he was purchasing and with its value as the plaintiff himself was, and under the rule of *caveat emptor* he was bound to take care to determine for himself the value of the property he was about to purchase, and knowing the value, he should not have been misled by any representation that the plaintiff might make. As the parties were on an even footing, dealing with each other at arm's-length, and there was no relation of trust or confidence between them, a mere assertion of value by the seller or a disparagement of value by the purchaser, although erroneous or false, is not actionable.

Where parties to a contract stand on an equal footing and have an equal means of knowledge, and there is no relation of trust or confidence between them, fraud cannot be predicated on a representation as to value. Value is largely a matter of judgment and estimation upon which men may differ; hence, representations of value, as a general rule, are not material: 12 R. C. L., p. 281. The author of Kerr on Fraud and Mistake, at page 55, states the rule as follows:

"As, on the one hand, mere assertions of value by the vendor of property are not fraudulent in law, though erroneous or false; so, on the other hand, a disparagement of property by a purchaser is not a fraud."

In this state the law is settled that—

"A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller; and between parties dealing at arm's-length where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make

use of his means of knowledge, and failing to do so, he cannot recover on the ground that he was misled by the seller.'' *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552), and authorities there cited; *McCabe* v. *Kelleher,* 90 Or. 45 (175 Pac. 608).

4. Under the facts disclosed by the evidence in this case, the plaintiff and the defendant H. F. Stryker, while negotiating for the sale of the drug-store, were dealing at arm's-length, and were standing on an equal footing. There was no relation of trust or confidence between them. No device or artifice was used to prevent the defendant from making a full and complete investigation of the matters and things referred to in the answer. There are cases where the seller or purchaser may put upon the other the responsibility of informing him correctly as to the market value or as to any other fact known to him affecting the value of the property, and while, in such a case, the party is not bound to answer, yet, if he does answer, he is bound to speak the truth, and if his answer is untrue and prejudice results therefrom, it is fraud: Kerr on Fraud and Mistake, p. 55. But the case made here by the defendants is not that kind of a case, and it does not fall within that rule for the reasons above stated. These representations of value were nothing more than the mere expression of an opinion, or what is often referred to as ''puffing,'' ''dealer's talk,'' or ''seller's statements,'' and the defendants had no right to rely upon them. Therefore they were not material representations, and fraud cannot be predicated thereon.

''Mere general commendations of property sought to be sold, commonly known as trade talk, dealer's talk, seller's statements, or puffing, do not amount to actionable misrepresentations where the parties deal at arm's-length, and have equal means of information

and are equally qualified to judge of the value of the property sold. This rule is based on the universal practice of the seller to recommend the article or thing offered for sale and to employ more or less extravagant language in connection therewith. The law does not hold him to a strict accountability for those vague commendations of his wares which manifestly are open to difference of opinion, and which do not imply untrue assertions concerning matters of direct observation; nor has the buyer any right to rely on such statements. It has even been held that such talk will not render the seller liable in damages although he acts in bad faith." 12 R. C. L., p. 250.

5. In support of the charge made in the answer, that the plaintiff falsely and fraudulently represented to the defendant H. F. Stryker before and at the time of the sale that the store was earning a salary of $250 per month and $500 in addition thereto, and that the peanut machine was earning not less than $2.50 per day, the defendants offered no testimony except that of the defendant H. F. Stryker. He testified that after he had acquired the store the amount of his sales was less than the amount of the sales the plaintiff represented the store and the peanut machine had earned. The contract of sale did not, in terms or by implication, warrant that the store or the machine would earn any amount whatever. The representation alleged was a representation of a past occurrence, and the testimony offered was of a subsequent occurrence. Between the two there could be no legitimate relation. To prove that these representations were false, it was necessary for the defendants to show that the sales made by the plaintiff were less than what the plaintiff had represented them to be. The amount of the sales subsequently made by the defendants was not competent to prove this fact. The allegation is that the plaintiff made

a statement of the amount which he himself had earned, not that he warranted what the defendants would earn. The representation alleged was collateral to and entirely independent of the contract. Not being an integral part of the contract, nor of the essence of it, it could not amount to a warranty. As there was no warranty of the amount the defendants would earn, evidence of what they did earn was immaterial.

Nor was there any evidence in any way tending to support the allegations relating to the lease. It appears that at the time of the transfer of the store, the plaintiff had mislaid his lease, but that it was subsequently found and assigned, and that the defendants had possession of the store under the lease for the period of five and one-half months, and upon their sale of the store, transferred such possession to the purchaser.

None of the provisions of the uniform sales law govern the questions involved here, as that act did not go into effect until after this purchase and sale had been consummated.

If the evidence offered by the defendants shows any fraud in this transaction, it discloses that it was the defendant H. F. Stryker, and not the plaintiff, whose acts were dishonest and fraudulent. It is not disputed that the gross sales of this drug-store during the year 1918, the year before the plaintiff purchased it, amounted to more than $52,000, and that plaintiff's net income therefrom during that year was over $7,000. Plaintiff transferred this property to the defendants upon defendants' payment of $9,000 in cash, and their undertaking to pay the notes sued on. Stryker, having actually paid out only $9,000, conducted the store for five and one-half months and received whatever income was realized therefrom, and

then sold and disposed of it for the sum of $11,100, which sum he has converted to his own use except $569 thereof that he has since paid on one of the notes. He thus received from the sale $1,500 more than the amount he actually paid and only $1,650 less than the entire amount that he had agreed to pay. He also received the entire income from the store during the time he was conducting it. He now seeks, upon the flimsiest of testimony, to recover, over and above the amount of the notes, $5,000 for alleged misrepresentations, all of which he has failed to establish.

6. Where a party alleges that a contract was obtained from him by fraud, the *onus probandi*, or burden of proving the fraud, lies on him, and whether the facts as proved amount to a fraud is a question for the court, as well in an action at law as in a suit in equity. Fraud must be proved as alleged, and the burden of proving it always rests upon the party alleging it. Fraud may be established either by direct or positive proof of fraud or by circumstantial evidence, but whether one or the other, the proof establishing the fraud must be clear, satisfactory and convincing: *Buck* v. *Columbia Agricultural Co.,* 106 Or. 531 (212 Pac. 801), just decided.

"The law in no case presumes fraud. The presumption is always in favor of innocence and not of guilt. In no doubtful matter does the court lean to the conclusion of fraud. Fraud is not to be assumed on doubtful evidence. The facts constituting the fraud must be clearly and conclusively established. Circumstances or mere suspicion will not warrant the conclusion of fraud. The proof must be such as to create belief and not merely suspicion. If the case made out is consistent with fair dealing and honesty, the charge of fraud fails." Kerr on Fraud and Mistake (5 ed.), p. 477.

In this case, as the right to relief rested upon fraud alone, the question of whether there was sufficient proof of fraud to satisfy the requirements of the law was a question of law for the court. As the answer admitted the execution of the notes sued on and as the right of the defendants to relief against their liability on the notes rested upon fraud alone, it became the duty of the trial court, upon defendants' failure to establish fraud, as alleged, to direct a verdict as was done in favor of the plaintiff for the amount which was admitted by the answer to be unpaid on the notes, and to give judgment accordingly.

For these reasons the judgment appealed from is affirmed.

AFFIRMED. MOTION FOR DAMAGES ON AFFIRM-
ANCE DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.