Argued September 5, decided September 16, 1913.

# SHEBLEY v. QUATMAN.

### (134 Pac. 68.)

**Partnership—Creation and Requisites—"Partnership."**

1.  A mere community of interest is not in itself sufficient to constitute a partnership, as there must be an agreement to share the profits and losses, and the profits must be shared as a result of the joint adventure or enterprise and not as a measure of compensation.

> [As to what constitutes a partnership, see note in 115 Am. St. Rep. 400.)

**Partnership—Sharing in Profits as Compensation.**

2.  Where plaintiff, a miner, who discovered certain lands to be rich in mineral, and defendant, who it was claimed agreed to find parties willing to advance the necessary funds to purchase the premises, executed an agreement, which provided that one half of the net gain to defendant of the contract between him and such other persons who advanced the funds was to be "paid" to plaintiff for his part in putting through the deals, plaintiff had no interest in the property itself, but was to receive one half of any profits that might accrue to defendant as compensation, and, where there was a *bona fide* sale of the property without any profits accruing therefrom, he had no further rights.

**Trusts—Evidence—Sufficiency.**

3.  In an action to impose a trust on land purchased by one of the defendants in trust for other parties, and subsequently conveyed by him to the other defendant, evidence *held* insufficient to show that plaintiff was a party to the trust agreement.

**Evidence—Relevancy—Value—Option Price.**

4.  The taking of an option to purchase property at a specified price is not evidence of the real or market value of such property.

**Fraud—Evidence—Burden of Proof.**

5.  Courts will not presume fraud, and will not find it, except upon clear and satisfactory testimony.

From Jackson: FRANK M. CALKINS, Judge.

Department 2.  Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit by J. G. Shebley against A. H. Quatman and J. K. Kendrick, and is brought for the purpose of having the defendant Quatman declared

trustee for plaintiff of certain lands situated in Jackson County.

The complaint, in substance, alleges that plaintiff is a skilled and experienced miner and prospector, and that by virtue of such skill and experience and his research and prospecting of the lands described in the complaint he had discovered such lands to be rich in mineral; that he informed defendant Kendrick of what he knew of the land, and the latter, in consideration of such knowledge of plaintiff and of his skill, experience and assistance, offered to find parties able and willing to advance the necessary funds to purchase said premises, and it was then and there, on June 1, 1909, covenanted and agreed between plaintiff and defendant Kendrick that the latter should find the party or parties who would, on account of the discoveries of the plaintiff, and on account of the knowledge of the skill and experience of the plaintiff as a miner, for a third of said property, advance the necessary funds to purchase the same, and that said defendant Kendrick and this plaintiff should each have an undivided one third of said property as their own. The complaint further states:

"That in accordance with said agreement said defendant Kendrick with the aid and assistance and advice of the plaintiff persuaded G. A. Barceloux, W. E. Scearch and C. L. Donohoe to advance and pay out the necessary funds, to wit, $11,500 to purchase and pay for said lands, and that said Barceloux, Scearch and Donohoe did in consideration that they between them should become the owners of the undivided one third of said premises, and the said Kendrick and the said plaintiff should each become the owners of the undivided one third of said premises, on to wit, November 5, 1909, pay unto Joseph Wakeman and Nancy Carter the price of said premises as aforesaid, and that the said Wakeman and Carter

then and there conveyed said premises unto the said defendant J. K. Kendrick in trust for the use and benefit of himself and plaintiff to the extent of the undivided one third each and the said Barceloux, Scearch and Donohoe to the extent of the undivided one third between them. * * That the lands hereinbefore referred to and which were purchased and taken by said defendant Kendrick in trust as aforesaid under said contract are described as follows, to wit (here follows description of the land). * * That on, to wit, on or about May 18, 1909, without the knowledge, or consent of the plaintiff and against the wish and will of the plaintiff the defendant Kendrick by his deed that day made, conveyed said premises unto the defendant A. H. Quatman. * * That said defendant Quatman paid no money, gave nothing of value, made no promise, entered into no obligation whatever and gave nothing nor did anything of value whatever as consideration for said premises for said conveyance. * * That said premises are of great value, to wit, more than the sum of $30,000. * * That the said defendant Quatman took the said conveyance of said premises with full knowledge of the rights of the plaintiff in and to said premises and as hereinbefore set forth. * * That plaintiff is informed and believes and on such information and belief avers that the said conveyance of said premises by said deft Kendrick to said deft Quatman was made and done in order to defraud this plaintiff of his rights in and to said premises. * * That since the making of said conveyance plaintiff has demanded of each and both of the defendants that they convey to him the undivided one third of said premises and has asked that they make and deliver to him, in such form that it may be recorded in the office of the county recorder of Jackson County, Oregon, a declaration in writing which will show his right, title, interest and estate as aforesaid in and to said premises. * * That each of the said defendants have neglected and refused and now neglect and refuse to make said conveyance or said

declaration, and they each now allege that the plaintiff does not now have and never had any right, title, interest, or estate in or to said lands or any portion thereof.''

Then followed a prayer for a decree declaring the trust, requiring Quatman to convey to plaintiff, and asking general relief. The defendant Kendrick was not served, and the defendant Quatman answered denying plaintiff's allegations as to his skill and experience and his agreement with Kendrick, and as to any trust relation between Kendrick and plaintiff, and denied the allegation that he paid no money, nor gave anything of value for the lands, and alleged that the conveyance to him by Kendrick was made for a good and valuable consideration, in good faith and free and clear from encumbrances, and without any knowledge of any rights of plaintiff in the premises. Further denials and a reply put the case at issue.

On the trial it appeared that Kendrick entered into an agreement with G. A. Barceloux, W. E. Scearch, and C. L. Donohoe to advance money to purchase the lands, which agreement is as follows:

"Whereas, J. K. Kendrick, G. A. Barceloux, W. E. Scearch and Charles L. Donohoe are desirous of securing options on certain mining land on Pleasant Creek and Ditch Creek and vicinity in the County of Jackson in the State of Oregon, and, whereas, J. K. Kendrick already has an option on 240 acres of land in that vicinity belonging to one Joseph Wakeman and 80 acres belonging to one Mary Carter, and, whereas, said parties have further agreed that the said G. A. Barceloux, W. E. Scearch and Charles L. Donohoe shall furnish the money necessary to secure said options; now, therefore, it is mutually agreed by and between said parties that the said J. K. Kendrick shall take all further options to said mining land in said vicinity in his own name for the benefit of said aforesaid parties as

follows: The said J. K. Kendrick to own two thirds interest in and to all of said options so taken and the said G. A. Barceloux, W. E. Scearch and Charles L. Donohoe one ninth interest each, therein and the said G. A. Barceloux, W. E. Scearch and Charles L. Donohoe shall furnish the money that may be necessary to secure said options and have already placed in the hands of J. K. Kendrick the sum of one thousand dollars for said purposes and in consideration thereof said W. E. Scearch, G. A. Barceloux and Charles L. Donohoe shall also have an undivided one ninth interest in and to all lands of Wakeman and Carter to which options have already been secured by said J. K. Kendrick as hereinbefore stated. And it is further expressly understood and agreed between said parties that in the event of the sale of any of said lands upon which options are taken or shall be purchased under this agreement that all moneys furnished for said purpose by any of the parties hereto and all expenses incurred shall first be paid to the parties furnishing the same out of the proceeds of the sale of the said land or options and thereafter the balance obtained from said sale of said lands for said options shall be divided among said parties in the proportion of their interests as hereinbefore stated. It is understood that all property hereunder shall be disposed of as a majority direct.

"In witness whereof the parties hereto have hereunto set their hands this the 16th day of September, 1909.

"J. K. KENDRICK.
"GEORGE A. BARCELOUX.
"W. E. SCEARCH.
"C. L. DONOHOE."

In pursuance of this agreement the three parties last named furnished between eleven and twelve thousand dollars and purchased the property, the deed being taken in the name of Kendrick. The trial court found for the defendant Quatman, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Charles W. Kitts* and *Mr. O. H. Lawler,* with an oral argument by *Mr. Kitts.*

For respondent there was a brief over the names of *Mr. W. E. Phipps* and *Mr. A. C. Huston,* with an oral argument by *Mr. Phipps.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. The first question that presents itself is as to the nature of the contract between plaintiff and Kendrick. Plaintiff's counsel contends that it was such as to constitute a partnership in dealing in land, and relies principally upon the case of *Flower* v. *Barnekoff,* 20 Or. 132 (25 Pac. 370, 11 L. R. A. 149), to sustain that contention. This case is authoritative and furnishes the rule to be followed by us; and, testing the evidence here taken by that case, we do not think a partnership is established in the case at bar. As well remarked in that case: "Partnership and community of interest, independently considered, are not always the same thing, nor is a mere community of interest sufficient, but there must be an agreement to share the profits and losses, and such profits must be shared as a result of the adventure or enterprise, in which both are engaged and not simply as a measure of compensation."

2. In this case we are not left to the contradictory statements of the parties as to what Kendrick's agreement was, as, at plaintiff's demand, it was reduced to writing and signed in duplicate by Kendrick and plaintiff. It is as follows:

"This is to certify that one half of the net gain to J. K. Kendrick of the contract between J. K. Kendrick, G. A. Barceloux, W. E. Scearch, and C. L. Donohoe is to be paid to J. G. Shebley for his part in putting through said deals.

"(Signed)    J. K. KENDRICK.
"J. C. SHEBLEY."

We think this is conclusive evidence, deliberately made by the parties themselves, that plaintiff should receive his one half of any prospective profits that might accrue to Kendrick from the sale of the property, as compensation. The agreement expressly recites that this "net gain" was to be "paid" to him, which negatives the idea that he was to receive any interest in the corpus of the property itself. He was working for Kendrick in the matter on the basis of a commission or a percentage of the profits to be derived from the sale; and, if there was a *bona fide* sale and no profits accrued from it, he stood to lose just as Kendrick did.

3. It is claimed that the sale was not *bona fide,* but was merely colorable, and that Kendrick still retains his interest in the property, and much of the testimony is directed to this point; but, without encumbering the record with a detailed discussion of the testimony, we will say that it leads us to the belief that Barceloux and his associates, having discovered that they could not make an immediate sale of the property at a profit, became anxious to close the matter up, and that Kendrick could not well do otherwise than to convey it at their request and get out of the venture. Shebley's claim that he signed one of the duplicate agreements along with Kendrick, Barceloux, Scearch and Donohoe is not borne out by the testimony, nor by his conduct. It is denied by each of the defendants. Thus in a letter to J. Kendrick he uses the following language: "Sir: I demand a copy of the contract which was existing between you on the one part and Mess. G. A. Barceloux, C. L. Scearch, and C. L. Donohoe on the other, on Sept. 18, 1909," etc. It is inconceivable that if he had been one of the signatory parties to such contract he would have omitted so to state in his formal demand for a

copy.    The claim that he signed the document is evidently an afterthought, and is not sustained.

4. There is some opinion evidence that the property is worth more than the price paid for it in the trade between Quatman and the syndicate, but this is vague and unsatisfactory. It has not been sold, and its value as mining property, or for any other purpose than for agriculture or grazing, is a matter of speculation and doubt. It is a matter of common experience that not one mining venture in fifty is a success, and the number of experienced miners who have failed in such ventures when their theories are put to the practical test by the hydraulic and sluice is probably about in the ratio suggested. The fact that somebody has been given an option to purchase such property at a higher price proves nothing as to its real value, or even its market value. Such options are usually taken with a view to examination of the real merits of the property before purchase, or with a view of finding a purchaser who will pay a better price without such examination.

5. Courts will not presume fraud and will not find fraud except upon clear and satisfactory testimony; and such testimony, in our opinion, has not been produced in this case.

The decree of the Circuit Court is affirmed.

AFFIRMED.


MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.