Argued January 18, affirmed February 27, 1923.

## BUCK v. COLUMBIA AGRICULTURAL COMPANY.

(212 Pac. 801.)

**Fraud—Proof must be Clear.**

1. Where fraud alleged is deliberate and intentional, clear and satisfactory proof is required to establish it.

**Reformation of Instruments—Evidence Insufficient to Support Finding That Lessor Made Agreement Different from That of Lease.**

2. Where leased lands were a part of lands owned by a drainage district, which owned a pumping plant used in connection with drainage ditches in emergencies, and successful cultivation depended on adequate drainage either by ditches or by use of the pump, in lessee's action against lessor for reformation of a lease of lands not owned by lessor but by the district, containing an agreement that lessor would use its best endeavor to have the district pump water from the lands so that the same will be a sufficient depth below the surface to permit proper seeding and cultivation, evidence *held* insufficient to show a verbal arrangement that, during the life of the lease, defendant would keep the water pumped from the lands, and that such provision was to be incorporated in the lease.

---

1. Degree of certainty necessary to establish fraud in civil action, see notes in Ann. Cas. 1912A, 711; 33 L. R. A. 836.

From Multnomah: J. P. KAVANAUGH, Judge.

Department 2.

The plaintiff brought this suit to reform a lease executed by the defendant whereby the latter demised to him a tract of land situated on the Columbia River bottom near the town of Clatskanie in Columbia County, Oregon. The tract was originally tide-land or semi tide-land, low and marshy, and had been reclaimed by means of diking and ditching, there being tide-gates at the end of the main ditch, the effect of which was to shut off the waters of the river at the rising or inflow of the tide and to open automatically at low tide so as to allow water which had accumulated in the main ditch or its laterals to flow out into the Columbia River, thereby draining the land. The ditch and dike served a very large area of land owned or occupied by other persons than plaintiff. The lands were a part of what is described as the Magruder Drainage District, a corporation distinct from defendant, which owned a pumping plant used in connection with the ditches in emergencies.

The successful cultivation of the land depended upon adequate drainage, either by ditches or by the use of this pump, although the weight of evidence, in our judgment, is to the effect that the ditch and its laterals, if the same were kept open, usually sufficed for the proper drainage of the land. The lease required the lessee to keep the irrigation and drainage ditches clean and open, and contained among other matters the following covenant or agreement:

"Said lessor further agrees that it will use its best endeavor to have said drainage district pump water from said lands so that the same will be at a suffi-

cient depth below the surface of the land to permit the proper seeding and cultivation thereof.''

In this clause lies the whole controversy. The plaintiff claims that at the time he made the verbal arrangement to lease the premises it was agreed between himself and Magruder, acting for defendant, that during the life of such lease the defendant would keep the water pumped from said lands so that it would be kept at a sufficient depth below the surface to permit the proper seeding and cultivation of the land and the harvesting of the crops grown there, and to prevent damage to any of said crops by water; and that it was agreed that such a provision should be incorporated in the lease and that defendant would have a lease containing such provision prepared by its attorneys.

It is further alleged in substance that plaintiff is unable to read or understand English and that, having full confidence in Magruder, the agent of defendant, he consented that Magruder should have the lease prepared by defendant's attorney; and that Magruder, with the intent to wrong and defraud plaintiff, in lieu of the provision requiring the defendant so to pump the water, inserted the provision above quoted. The plaintiff says that through his ignorance of the English language he signed the lease without being aware of the fraudulent deviation from the terms orally agreed upon.

The plaintiff charges that after the execution of the lease he went, in December, 1917, into possession of the land and it was his intention to plant in the spring of 1918 eighty acres of potatoes, but that during the months of January, February, March and April of 1918 the land which he intended to use for that purpose was so frequently under water that it was

not in a proper condition to plant until about May 13th; that on many occasions during said months he notified defendant of the presence of the water on the land and informed defendant that he desired to plant potatoes by the first of April of said year, and requested defendant to pump the water from the land; but that plaintiff did not get the use of the land until about May 13th, when he began planting and continued so to do until all of said eighty acres had been planted. The complaint further recites that due to the late planting occasioned by defendant's refusal to pump seasonably, the potatoes did not ripen and that plaintiff thereby lost 436,800 pounds thereof, valued at $7,862, which amount he claims as his damages in the premises. The complaint describes in detail the neglect and refusal of defendant to pump water seasonably and the damage occasioned thereby; and if the lease contained the covenant which plaintiff claims should have been inserted therein, the complaint states a good case for damages. The plaintiff further asks in effect that the lease be reformed so as to contain an absolute covenant to pump water.

The defendant answered, denying the allegations of fraud absolutely, and in effect denying that there was ever any understanding in regard to the pumping of water other or different from that embodied in the lease, also denying generally any damage to plaintiff by reason of defendant's having failed to keep water off the land, and stating in effect that the damage was due to bad husbandry on the part of plaintiff instead of an excess of water on the land. Many other defensive matters are pleaded, but with the views we entertain as to the principal facts, it is needless to encumber the reports with a recital of them. A decree was entered for defendant, and the plaintiff appeals.                                AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Arthur I. Moulton.*

For respondent there was a brief over the names of *Mr. Guy C. H. Corliss* and *Mr. Russell E. Sewall,* with an oral argument by *Mr. Corliss.*

McBRIDE, C. J.—1. The law as to the modicum of proof necessary to establish fraud is well settled and counsel do not disagree in respect to that. Particularly in cases of this kind where the alleged fraud is not constructive, but deliberate and intentional, clear and satisfactory proof is required to establish it.

"While it is not necessary, in order to sustain an allegation of fraud, that the evidence should be so decisive as to leave no doubt, unless it be in the case of an attempt to overturn a writing, the rule requiring clear and satisfactory evidence appears to mean more than is meant by satisfactory evidence of other facts not involving turpitude. There is, it seems, in the case of a charge of fraud, a presumption of honesty to overcome, and stronger evidence will accordingly be required than would be necessary in a case in which no presumption to be met existed": 1 Bigelow on Fraud, p. 145.

2. The evidence in the case at bar is far from being of the satisfactory character indicated in the above quotation.

The only witness to the original conversation is the plaintiff himself, who claims, perhaps falsely, and Mr. Sewall's testimony indicates, that he cannot understand English; and the interpreter who was with him at that time was absent from the state when the trial was had, and was therefore not called. Mr. Magruder flatly contradicts him. So, as to the original understanding we have the testimony of a witness who

either could not himself understand the statements of Magruder or who falsely denies that he could understand English, and it is therefore unreliable.

As to what took place in Mr. Sewall's office, we have the testimony of the plaintiff under the same limitations as before, against the testimony of Mr. Sewall, a highly respected member of the bar, and of Magruder, so that there is no outweighing of the testimony in favor of the plaintiff. Moreover, the circumstances relied upon by him to add weight to the direct testimony of himself and his interpreter are equivocal and add little or nothing to the sum of our information on those subjects. Mr. Magruder testifies that the provision in regard to using defendant's influence to cause water to be pumped under certain circumstances was inserted in many other leases to other parties, and this is not denied. He gives as a reason for this that the defendant had no authority to designate the time of pumping, as the pumping equipment belonged to the drainage district, of which organization the defendant was only a member along with many others. It seems reasonable that whenever drainage was necessary for one owner on this flat, swampy land it would be necessary for all or nearly all of the other owners, and that self-interest would lead the cultivators in the drainage district to unite in pumping when necessary, wherefore the defendant could safely promise that its influence would be directed to that end, with every probability that a request of that kind would meet with a favorable response. To have promised more would have been unreasonable under the circumstances. We do not believe that such an agreement as plaintiff contends for was made. There is not sufficient testimony to justify us in so finding.

This view of the case renders it unnecessary to consider the question of damages.

The decree of the Circuit Court is affirmed.

AFFIRMED.

BEAN, BROWN and HARRIS, JJ., concur.