Argued and submitted March 6, reversed and remanded September 11, petition for rehearing denied October 9, 1979

# DIZICK, *Petitioner,*
## *v.*
# UMPQUA COMMUNITY COLLEGE, *Respondent.*

### (CA 7429, SC 25923)

599 P2d 444

Dean Heiling, of Heiling & McIntosh, Roseburg, argued the cause and filed the briefs for petitioner.

Eldon F. Caley, of Long, Neuner, Dole, Caley & Kolberg, Roseburg, argued the cause and filed the brief for respondent.

DENECKE, C. J.

## DENECKE, C. J.

This is an action for damages for fraudulent representations brought pursuant to the Oregon Tort Claims Act. The principal question is whether the defendant governmental body is immune from liability because the claim is based upon the performance of a "dis cretionary function."

The jury returned a verdict for the plaintiff, however, the trial court granted defendant's motion for a judgment notwithstanding the verdict. A Court of Appeals panel of three judges affirmed with one judge specially concurring and one judge dissenting, *Dizick v. Umpqua Community· College,* 33 Or App 559, 577 P2d 534 (1978). We granted review and remanded the case for reconsideration in light of our decision in *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978). The Court of Appeals adhered to its initial decision, 37 Or App 55, 585 P2d 1148 (1978). We again granted review, and we reverse.

The plaintiff had some basic welding training but wanted to qualify as an advanced welder. He contacted representatives of the defendant college and was told that if he enrolled he would be taught advanced welding, including metal inert gas welding (MIG), tungsten inert gas welding (TIG), and the operation of a milling machine. The 1973-74 catalog of the college offered courses teaching these skills. Representatives of the college told the plaintiff a milling machine was on order and would be available for use in instruction.

Plaintiff started college in the spring term of 1974. He attended school for three consecutive terms and testified he never received MIG or TIG training or instruction work on a milling machine. He testified that the TIG and MIG equipment was inoperative or was unavailable for other reasons. Plaintiff further testified that when he complained he was told additional TIG and MIG equipment and a milling machine were on order, and that he would get training in these various techniques and on these machines.

Witnesses testifying for the college denied much of plaintiff's testimony or offered explanations of what occurred which would exonerate the college. However, as the verdict was for plaintiff, we must consider the evidence in the light most favorable to plaintiff.

The college contends that the plaintiff in an action for fraudulent misrepresentation must show not only that the defendant made certain promises and did not fulfill them, but that when the promises were made the defendant had no intention to fulfill them. The college further contends that the plaintiff offered no evidence on the latter point, an essential element of the tort of fraudulent misrepresentation.

In this case, however, there is evidence from which a jury could infer that defendant's personnel made at least some of the representations in reckless disregard of whether it could perform. This is sufficient to prove promissory fraud. *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 548, 487 P2d 870 (1971). An example of such evidence is plaintiff's testimony that at the beginning of each term plaintiff would ask if materials would be available and he was told "it's on order and the stuff will be here. Don't worry about it." Plaintiff further testified he related this conversation to a college instructor who commented that "the stuff" had been on order for approximately three years.

The trial court correctly denied defendant's motion for a directed verdict made upon the ground that there was no evidence of fraud.

Turning to the principal question, the cause of action arose under ORS 30.265, which in 1975 provided:

"(1). Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. As used in ORS 30.260 to 30.300, 'tort' includes any violation of 42 U.S.C. section 1983.

[306]

"(2) Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability.

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties are immune from liability for:

" * * * * *.

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

The college's contention is that the discretionary exception applies. The trial court and a majority of the Court of Appeals were of the opinion the discretionary exception did apply.

We attempted to outline the characteristics of a "discretionary function" in *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970). We there stated:

"The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." *Id.* at 506.

We recently made a similar attempt in *McBride v. Magnuson,* supra at 436-37:

" * * * But not every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1970), *quoting Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding 'the adaptation of means to an end,

and discretion in determining how or whether the act shall be done or the course pursued,' *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute,' and for the judgment that one or more of these objectives will be served by a given action, *Dickinson v. Davis,* 277 Or 665, 673, 561 P2d 1019 (1977). In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment."

Applying these broad statements to the facts of the present case, we conclude that the defendant's representatives were not exercising a discretionary function. We are of the opinion that our disagreement with the trial court and the Court of Appeals is at least in part caused by a difference in the identification of the function the college representatives were performing.

The trial court in a written opinion stated "The Court finds that the publication and content of the defendant's catalog was a performance of a discretionary function of duty and that defendant is immune from liability arising therefrom." The author of the principal opinion of the Court of Appeals viewed the function differently:

> "The method of instruction and course content obviously involve complex judgmental decisions by college officials. A jury verdict here is tantamount to a direction to the college to provide practical use training as part of the curriculum for the courses offered in the catalog." 33 Or App at 566.

The chief judge specially concurred, stating, "I would hold the Umpqua Community College immune on the ground that recruiting and counseling of students is a government activity not to be reviewed by court or jury." 33 Or App at 570.

In our opinion the dissent in the Court of Appeals correctly identified the function:

> "While I agree that an action based on the failure of the college to include certain courses in the curriculum or teach certain techniques in the courses would be barred by governmental immunity, I see no relevance to that position in this case. The plaintiff sued on account of statements made to him in order to induce his enrollment." 33 Or App at 570.

The evidence set out above supports this characterization of the function performed by the representatives of the college which is the basis for plaintiff's claim. Plaintiff contends defendant's representatives assured him certain material and equipment would be available for use in instruction; that material and equipment was not available and the representatives acted recklessly in assuring plaintiff it would be available. This statement of what they are charged with doing is itself sufficient to show they were not performing a "discretionary function." Their representations did not allow "room for policy judgment," the responsibility of deciding "the adaption of means to an end," or the "assessment and ranking of the policy objectives explicit or implicit in the statute." *McBride v. Magnuson, supra* at 437.

One other portion of the principal opinion of the Court of Appeals deserves comment. The opinion states:

> "The oral representations made by the dean of the college that '[w]e have the M.I.G. and T.I.G. and a milling machine on order * * * we have everything you need * * * [w]e'll be able to train you' is not necessarily a promise that plaintiff will be able to actually use the equipment as a part of the training offered by the college. *The fact that a jury might reasonably draw such inference in a fraud action between private parties is insufficient. See Elizaga v. Kaiser Found. Hosp.,* 259 Or 542, 487 P2d 870 (1971). Reasonable persons could draw a variety of different inferences from such representations. The purpose of

immunizing governmental agents is to prevent litigious interference with important governmental functions. That purpose is defeated if courts or juries are permitted to draw specific inferences from general statements. By plaintiff's own testimony, the statements were made by the dean in counseling plaintiff concerning his educational program. ORS 341.290 charges community colleges with performing the counselling function as an important part of the educational program. *See* footnote 3 [ORS 341.290]. Effective counselling depends upon free and open communication between the counsellor and the counsellee. Such communication would be chilled if the college counsellor faced potential liability for every statement from which an adverse inference might be drawn." 33 Or App at 567-68 (emphasis added).

As the dissent in the Court of Appeals states, the import of these statements in the principal opinion is that the plaintiff has a higher standard of proof for fraud when the defendant raises the defense of governmental immunity. We know of no reason why a higher standard of proof should be imposed, and we have found no authority for imposing a higher standard. Governments are immune from liability when its agents are performing a discretionary function, but no higher burden of proof is placed upon a plaintiff when it attempts to prove fraud against a government than against a private party.

Defendant contends that if we reverse the ruling setting aside the plaintiff's verdict, the college is entitled to a new trial because of other alleged errors committed by the trial court. The defendant did move the trial court for a new trial on these grounds, but as the trial court granted defendant's motion for a judgment notwithstanding the verdict, it did not rule on the motion for a new trial.

Defendant asserts that the trial court erred in instructing on the plaintiff's burden of proving damages. The trial court instructed that plaintiff must prove by "clear and convincing evidence" that the

misrepresentations made were false and "were material to the extent that the plaintiff would not have in fact enrolled or continued in school had the plaintiff known that such representations were false * * *." It then instructed, however, that if the jury so found, then the plaintiff had to prove his damages only by a preponderance of the evidence.

█ Assuming fraud must be proved by "clear and convincing evidence," the trial court did not err in instructing that the extent of damages only had to be proved by a preponderance. *See* concurring opinion in *Byers v. Santiam Ford,* 281 Or 411, 418, 574 P2d 1122 (1978). As the defendant points out, we have stated that all elements of fraud including damages must be proved by clear and convincing evidence. *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976); *Conzelmann v. N.W.P. & D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757 (1950). Whether damages had to be so proved was not in issue in those cases and we spoke too broadly about the burden of proof for damages.

This court has repeatedly stated that fraud must be proven by clear and convincing evidence, or clear and satisfactory evidence. For example, *see Shebley v. Quatman,* 66 Or 441, 134 P 68 (1913). The statements were linked to the statutory and common-law presumptions that a person is presumed innocent of wrong and that private transactions have been fair and regular or conducted honestly. *Castleman v. Stryker,* 107 Or 48, 60, 213 P 436 (1923); *Buck v. Columbia Agricultural Co.,* 106 Or 531, 535, 212 P 801 (1923); ORS 41.360(1),(19). Once that presumption has been overcome, however, by a jury finding that the defendant made a fraudulent representation, there is no reason why the burden of proof of damages in fraud should be different from proof of damages caused by any other tort. We hold there is no difference, and the trial court did not err. We do not imply a trial court would err in not so instructing. The necessity for such an instruction will depend upon the other instructions given by the court.

■ Defendant further assigns as error the trial court's refusal to give defendant's requested instruction defining the reckless making of a misrepresentation. The trial court did not err; "reckless," in the context used by the trial court, has a common enough meaning so that failure to further define it was not error.

Defendant also contends the trial court applied an improper measure of damages. Plaintiff's proof of damages consisted of evidence that if he had not enrolled and continued in the college because of the misrepresentations of the college, he would have worked and earned wages during that period. He contends the measure of damages is the amount of those lost wages. Linked with this evidence is plaintiff's testimony that because the instruction was not as represented, he could not get a welding job after he finished attending the college.

Defendant contends that in fraud cases there are only two measures of damages; the "benefit of the bargain" and "out of pocket" measures. We stated in *Elizaga,* however:

> "A statement of these two measures of damages is sufficient to show that they are inapplicable to a case of a fraudulently induced employment contract. In this case there is no 'real value' of the compensation to be paid. There is the amount plaintiff would have earned under the contract, and the amount plaintiff actually earned."

In that case we approved the trial court's instructing the jury that "the measure of damage would be that amount of money which would compensate the plaintiff for the actual salary loss he has suffered as a result of the deceit." 259 Or at 549.

■ ■ When the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered. *Espaillat v. Berlitz Schools of Languages,* 127 DC App 293, 383 F2d 220, 24 ALR 3d 1380 (1967). The measure selected here was appropriate.

■ Defendant's last assignment pertains to the allegation that the defendant failed to supply welding rods. Assuming defendant's claim of alleged error was adequately preserved for consideration on appeal, we conclude that the welding rods were such a minor element in the case that any error made in regard to the rods would not be prejudicial.

Reversed and remanded with instructions to reinstate the judgment for plaintiff.