Argued and submitted October 29, 2002, affirmed November 13, 2003

Eric BRAMEL
and Audrey Bramel,
*Appellants,*

*v.*

William D. BRANDT;
Mark E. Griffin; James E. McCandlish;
Paul M. Ferder; W. Wallace Ogdahl;
Christopher J. Casebeer; Carla French;
Griffin McCandlish,
an Oregon partnership;
Ferder, Brandt & French, LLP,
an Oregon limited liability partnership;
Ferder, Ogdahl, Brandt & Casebeer,
an Oregon partnership;
and William D. Brandt, P.C.,
an Oregon professional corporation,
*Respondents.*

0008-08291; A116484

79 P3d 375

Cathy E. Crandall argued the cause for appellants. On the opening brief were Peter R. Chamberlain and Bodyfelt Mount Stroup & Chamberlain LLP. On the reply brief were James L. Hiller and Hitt Hiller& Monfils LLP.

Peter R. Mersereau argued the cause for respondent Mark E. Griffin. On the brief were Thomas W. McPherson and Mersereau & Shannon LLP.

Ralph C. Spooner and Spooner Much & Ammann PC waived appearance for respondents Paul M. Ferder, W. Wallace Ogdahl, Christopher J. Casebeer, Carla French, Ferder Brandt & French LLP, and Ferder, Ogdahl, Brandt & Casebeer.

Susan K. Eggum waived appearance for respondents William D. Brandt and William D. Brandt, PC.

Alan Gladstone waived appearance for respondents James E. McCandlish and Griffin McCandlish, an Oregon corporation.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiffs retained defendants to represent them against Mac Tools and Stanley Works, Inc. (Mac/Stanley), for which they were distributors. Defendants negotiated a settlement agreement with Mac/Stanley on plaintiffs' behalf that contained as a settlement condition an agreement by Mac/Stanley to employ defendants. The effect of that provision was to prevent defendants from representing future claimants against Mac/Stanley. Plaintiffs signed the agreement because they believed that they had no other choice, but they filed a complaint with the Oregon State Bar concerning defendants' conduct and subsequently filed this action, asserting claims for breach of fiduciary duty and fraud. Plaintiffs appeal from a judgment that dismissed their claims on the grounds that they are barred by the statute of limitation and that they failed to state a claim. We affirm.

The complaint alleges that plaintiffs retained defendants in December 1992 to represent them against Mac/Stanley. Defendants also represented 48 other distributors who had claims against Mac/Stanley. Defendants negotiated a global settlement with Mac/Stanley on behalf of plaintiffs and all of the other claimants. During the negotiations, Mac/Stanley proposed that, after execution of the settlement agreements, Mac/Stanley would retain defendants for legal advice on the recruitment, training, and termination of distributors, and proposed to insert in the settlement agreement a paragraph that disclosed Mac/Stanley's plan to retain defendants. Defendants at first rejected the idea, questioning the ethics of it. Subsequently, however, the retention of defendants by Mac/Stanley became a condition of the settlement. Before the settlement agreements were executed, defendants signed agreements with Mac/Stanley for the year 1994, under which Mac/Stanley retained defendants for a fee of $10,000. Pursuant to the agreements, defendants were disqualified from representing distributors in litigation against Mac/Stanley. The retainer agreements provided that Mac/Stanley would indemnify defendants if any claim or complaint was brought against them as a result of entering into the agreements. The retainer agreements were placed in escrow and were to be released only if all claimants signed

and delivered their settlement agreements by January 26, 1994.

By letter to plaintiffs on January 17, 1994, defendants disclosed the terms of the settlement agreement and some facts about their agreement to represent Mac/Stanley:

> "After we obtained Mac/Stanley's agreement to resolve our cases for a sum certain, Mac/Stanley made a separate offer to hire Griffin McCandlish and Ferder, Ogdahl, Brandt & Casebeer to work for Mac/Stanley in the future. Mac/Stanley's retaining of Griffin McCandlish and Ferder, Ogdahl, Brandt & Casebeer was not solicited by us in any way. However, after consideration, Griffin McCandlish and Ferder, Ogdahl, Brandt & Casebeer agreed to provide certain legal advice and counsel on improving their distribution recruitment practices. Once we are retained by Mac we will be unable to pursue claims like yours against Mac/Stanley in the future. We are disclosing this information to you because we feel that we have an obligation to do so and ask that you sign this letter and return it to us as your acknowledgment of this disclosure.

> "Because this situation may appear to create a conflict of interest, we recommend that you seek independent legal advice to determine if consent should be given."

Plaintiffs did consult with independent legal counsel, Richard Kuhling, who met with Griffin. Griffin did not disclose to Kuhling the existence or terms of the signed retainer agreements or the escrow of those agreements. On January 28, 1994, Kuhling wrote a letter to plaintiffs explaining his view of the ethical issues that were raised by defendants' agreement to provide legal services to Mac/Stanley:

> "Continuing the client relationship once the lawyer's professional judgment may have been affected by the lawyer's financial and personal interest in violation of Disciplinary Rule 5-101.

> "Failure to provide timely and full disclosure concerning the lawyer's proposed representation of the party adverse to you in violation of Disciplinary Rule 5-105(c).

> "Participating in the making of an aggregate settlement without full disclosure to you of the nature of all the claims

and the participation of each person in violation of Disciplinary Rule 5-107.

"Prejudicing your interests by inhibiting your ability to investigate and discuss claims against Mac Tools with 48 prior claimants except under Subpoena and in the presence of Mac Tools' lawyers in violation of Disciplinary Rule 5-107 and Disciplinary Rule 10-101(b)(1).

"Failure to make 'full disclosure' as required by Disciplinary Rule 10-101(b)(1)."

Despite their concerns about defendants' agreement with Mac/Stanley and their belief that the settlement amount was too small, plaintiffs signed the settlement agreement on January 28, 1994, because they faced cash flow problems and possible bankruptcy. The settlement agreement contained the following paragraph:

"Retention of Counsel. Distributor understands that, upon execution of this Agreement resolving all matters and disputes between the Distributor and Mac Tools, counsel for the Distributor will be retained by Mac Tools at counsel's normal hourly rates to advise Mac Tools, and the Distributor approves of this retention. By his signature approving this agreement, counsel for Distributor agrees to, acknowledges, approves and accepts this retention."

Plaintiffs subsequently filed a complaint against defendants with the Oregon State Bar. In a May 30, 1994, letter to the Oregon State Bar, plaintiffs wrote:

"By their own admission in the letters and by inserting the retainer clause in the settlement Messrs. Brandt and Griffin must have had considerable knowledge of and plans to represent Mac Tools in the future. This retainer agreement was obviously planned out long before the culmination of the settlement agreements. I find it highly unlikely that there was no discussion of this before the settlement was finalized. The inclusion of the waiver of representation clause in our settlement is proof that this issue was discussed between our lawyers and Mac before settlements were finalized. * * *

"* * * * *

"* * * We are not confident that our attorneys had only our best interests in mind during the negotiation process with Mac Tools."

The disciplinary matter resulted in a determination that defendants Griffin and Brandt had violated three disciplinary rules: DR 5-101(A)(1) (prohibiting accepting or continuing employment when exercise of lawyer's judgment will be or reasonably may be affected by lawyer's own interest, except with consent of client after full disclosure); DR 1-102(A)(3) (prohibiting engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 2-108(B) (prohibiting, in connection with settlement, entering into an agreement that restricts a lawyer's right to practice law). The Supreme Court imposed a suspension of defendants Brandt and Griffin from the practice of law for 13 and 12 months, respectively. *In re Brandt/Griffin*, 331 Or 113, 148-49, 10 P3d 906 (2000).

As relevant to this proceeding, the Supreme Court found in the disciplinary matter that defendants had signed the retainer agreements with Mac/Stanley before the settlement agreement had been executed by plaintiffs and that all of the terms of the retainer agreements had not been disclosed to plaintiffs before they signed the settlement agreement:

"Nothing in the accused's letter to [plaintiff] Bramel informed him that, on January 11, 1994, the accused had signed retainer agreements with Stanley and placed them in escrow. As explained above, as of January 11—when the accused agreed to be retained by Stanley before Bramel had agreed to the amount of the settlement that the lawyers had reached on December 20—the accused's interests were divided between at least one of their current clients, Bramel, and Stanley when it came to recommending whether Bramel should accept the settlement. In other words, beginning on January 11, 1994, *it is possible* that the accused's relationship with Stanley motivated them to recommend to Bramel a settlement that they would not have recommended—and that was not as favorable to Bramel as it could have been—if their loyalty had not been divided. Nothing in the letter informed Bramel that the accused's retainer agreements with Stanley contained indemnity provisions [e]nsuring that the accused would be

protected fully by Stanley if Bramel decided to bring a claim against them because of the conflict of interest that they had acquired on January 11. A potential adverse impact of the indemnity provisions on Bramel was that, because of that protection, the accused's interests might be aligned with Stanley, not Bramel, their current client. The letter of January 17, 1994, fell short of the full disclosure required by DR 10-101(B).

"The accused contend that their disclosure satisfied the requirements of DR 10-101(B), because it led Bramel to believe that his lawyers had 'switched sides' and had 'betrayed' him during settlement negotiations and that Kuhling then had advised Bramel about the potential adverse effects of the accused's conflict of interest. That argument is without merit. DR 10-101(B) requires the explanation that the *lawyer* gives to the *client* to be sufficient to apprise the client of the adverse consequences of the lawyer's conflict. The rule does not direct us to examine the client's subjective understanding of the lawyer's explanation, whether or not enhanced by consultation with an independent lawyer. Additionally, under DR 10-101(B), the issues of the sufficiency of the disclosure and consultation with independent counsel are separate: A lawyer must, when full disclosure is required under DR 5-101(A)(1), provide disclosure sufficient to apprise the client of adverse consequences *and* advise the client to seek independent counsel. DR 10-101(B) does not provide that advice from independent counsel may serve as a *post hoc* substitute for the lawyer's own disclosure. Moreover, the disclosure that the lawyer gives the client will affect the ability of independent counsel to assess the conflict and to advise the client. We hold that the accused violated DR 5-101(A) by continuing to represent Bramel after January 11, 1994, without having provided full disclosure to obtain Bramel's consent."

*In re Brandt / Griffin*, 331 Or at 136-37. (Emphasis Supreme Court's.)

Plaintiffs filed their first complaint against defendants in federal court on July 30, 1998. That complaint was dismissed on August 18, 1999, for lack of diversity jurisdiction. Plaintiffs filed this action on August 17, 2000,[1] alleging

---

[1] ORS 12.220 provides:

that, in failing to disclose the existence and terms of the retainer agreements and the escrow of those agreements, defendants had breached their fiduciary duty to plaintiffs and committed fraud. Plaintiffs asserted that they did not learn the complete terms of defendants' retainer agreements with Mac/Stanley before September or October 1997. Plaintiffs alleged that they are entitled to recover as damages on the breach of fiduciary duty claim the attorney fees that they paid to defendants in settling their claims against Mac/Stanley and the attorney fees that they paid to Kuhling to advise them about the effect of defendants' conduct on the settlement. They alleged the same damages on the fraud claim.

On cross-motions for summary judgment, the trial court dismissed the complaint on the grounds that the complaint is barred by the statute of limitation and that it fails to state a claim. We affirm the trial court's ruling because we agree that the statute of limitation has run on the claim for breach of fiduciary duty and that the complaint fails to state a claim for fraud.

■■ Plaintiffs' claims are subject to the two-year limitation period for torts in ORS 12.110(1):

> "An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action based on fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

---

"Except as otherwise provided in ORS 72.7250, if an action is commenced within the time prescribed therefor and the action is dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff, or if the plaintiff dies and any cause of action in the favor of the plaintiff survives, the heirs or personal representatives of the plaintiff, may commence a new action upon such cause of action within one year after the dismissal or reversal on appeal; however, all defenses that would have been available against the action, if brought within the time limited for the bringing of the action, shall be available against the new action when brought under this section."

In *Hatley v. Truck Insurance Exchange*, 261 Or 606, 494 P2d 426, *on reh'g*, 495 P2d 1196 (1972), the court held that an action filed in federal court and dismissed for lack of diversity jurisdiction could be refiled within one year of the dismissal pursuant to ORS 12.220.

Their claims also are subject to a discovery rule. Under that rule, a claim accrues when the plaintiff knows or, in the exercise of reasonable care, should know facts that would make a reasonable person aware of a substantial possibility that each of the three elements of the claim—harm, causation, and tortious conduct—exists. *Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994).

We therefore must determine whether the record demonstrates that a factual dispute exists about whether plaintiffs "discovered or in the exercise of reasonable care should have discovered" the existence of their claims by July 30, 1996, which is two years before the date on which they commenced their action in federal court. *Greene v. Legacy Emanuel Hosp.*, 335 Or 115, 60 P3d 535 (2002). In the context of plaintiffs' claim for breach of fiduciary duty, the issue is whether there are questions of fact as to when plaintiffs learned that defendants had been disloyal to them and that they had been harmed as a result of that disloyalty.[2]

On appeal, plaintiffs assert that, although they knew in January 1994 that defendants would be retained after the settlement to represent Mac/Stanley, plaintiffs did not have sufficient information at that time to know that they had suffered legally cognizable harm from defendants' breach of fiduciary duty because they did not know of the existence or terms of the January 11, 1994, retention agreements and of the escrow of those agreements.[3]

---

[2] In Greene, the court took pains to explain why the phrase "inquiry notice," as used in its prior case law, does not accurately describe the imputed knowledge necessary to trigger the accrual of a claim under a rule of discovery limitation. 335 Or at 121-23.

[3] These are the facts of which plaintiffs did not become aware until 1997:

"On January 11, 1994, at a meeting with Mac's lawyers, Brandt and Griffin signed a retainer agreement with Mac Tools which guaranteed each lawyer a $10,000 non-refundable retainer and provided that Mac would indemnify Brandt and Griffin from any complaints brought against them as a result of entering into the agreement. These agreements, along with instructions signed by Brandt and Griffin, were put into escrow, only to be released if all claimants, including Bramels, agreed to the settlement by January 26, 1994. Brandt and Griffin never disclosed the retainer agreements, the escrow, or the escrow instructions to their clients, Eric and Audrey Bramel."

Although plaintiffs were not aware of the January 11, 1994, retainer agreements, that they contained an indemnity provision, or that they had been placed in escrow contingent on the signing of the settlement agreements, we are persuaded that plaintiffs had sufficient knowledge as early as May 1994 of defendants' disloyalty and of injuries allegedly resulting from that disloyalty to know that they had a claim for breach of fiduciary duty. In their January 17, 1994, letter to plaintiffs, defendants recommended that plaintiffs seek independent legal advice in signing the settlement agreement because the proposed retainer agreements on which the settlement was contingent "may appear to create a conflict of interest." The January 28, 1994, letter to plaintiffs from Kuhling warned plaintiffs of both the potential conflict of interest posed by the retainer agreements and possible nondisclosure by defendants of the details of the negotiations leading up to the settlement and retainer agreements. In their May 30, 1994, letter to the Oregon State Bar, plaintiffs expressed concern over details of the negotiations that they suspected had not been disclosed to them by defendants as well as the possibility that defendants did not have "only our best interests in mind during the negotiation process."

Although plaintiffs may not have known the full dimensions of defendants' disloyalty, such as the existence of the signed Mac/Stanley retainer agreements, the record on summary judgment shows that by 1994 plaintiffs were aware of sufficient facts from which a reasonable person would have concluded that he or she had suffered legally cognizable harm from defendants' breach of their fiduciary duty. That is particularly true in light of the damages that plaintiffs seek on the claim, consisting of the attorney fees that they paid to defendants and to Kuhling in 1994. Consequently, the trial court did not err in concluding that plaintiffs' claim for breach of fiduciary duty was time barred.

■ As to the fraud claim, the statute of limitation analysis is similar to the analysis that applies to the breach of fiduciary duty claim, except that the actual or imputed knowledge that a plaintiff must have in order to start the running of the statute has been described as "including the fact of the fraud itself," that is, the misrepresentation and its falsity. *See, e.g.*, *Widing v. Schwabe, Williamson & Wyatt*,

154 Or App 276, 283, 961 P2d 889 (1998) (citing *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1 (1978)). Here, plaintiffs' fraud claim is based on defendants' failure to disclose the existence and terms of the signed retainer agreements and the escrow of those agreements before plaintiffs signed the Mac/Stanley settlement agreement. Although the January 28, 1994, letter from Kuhling warned plaintiffs that defendants might not have disclosed facts about the negotiations leading up to the settlement and retainer agreements, as well as the damages that plaintiffs may have suffered as a result of defendants' failure to disclose information, a jury could find that plaintiffs had no knowledge of the alleged fraudulent omissions, that is, the existence and terms of the retainer agreements and the escrow of those agreements, until 1997, and that there are no facts from which such knowledge could be imputed to them before then. We conclude, accordingly, that a jury could find that the fraud claim based on the nondisclosure of the retainer agreements and the escrow of the agreements did not accrue until 1997, when plaintiffs finally learned of the omissions. Consequently, the trial court erred in concluding that plaintiffs' fraud claim is time barred.

■      As an alternative ground for affirmance, defendants assert that the complaint failed to state a claim for fraud because it did not allege damages that could be recovered as a result of defendants' nondisclosure. The damages alleged in the complaint on the fraud claim are the attorney fees that plaintiffs paid to defendants as their contingent fee on the Mac Tools settlement and the fees paid to Kuhling.

The contingent fee paid to defendants out of the Mac Tools settlement proceeds is not a cognizable form of damages for fraud, first, because the agreement to pay those fees *preceded* the alleged fraudulent misrepresentation by more than a year. Second, plaintiffs acknowledge that their claim for return of the fee is not based on the reasonableness of the fee or on whether the settlement was a good or bad deal for them. They assert, simply, that "disgorgement" of the fee is an appropriate remedy when a client has been the victim of an attorney's conflict of interest. *See Kidney Association of Oregon v. Ferguson*, 315 Or 135, 144, 843 P2d 442 (1992) (courts with authority to review and allow a lawyer's fees

have authority to address breaches of that lawyer's duty of loyalty to the lawyer's client by denying part of or all the fees). It is true, as the Supreme Court said in *Dizick v. Umpqua Community College*, 287 Or 303, 312, 599 P2d 444 (1979), that,

> "when the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered."

Although we are not prepared to conclude that fees of the type paid to defendants would never be an appropriate measure of damages for fraud, plaintiffs have not alleged any facts that make the necessary nexus between the alleged fraud and the fees paid to defendants.

The same concern applies to the fees that plaintiffs paid to Kuhling. Plaintiffs incurred that expense because of the need to seek independent advice about the proposed Mac Tools settlement and defendants' possible conflict of interest. Even if defendants had made full disclosure of the escrow and retainer agreements, plaintiffs would have incurred Kuhling's fees. We therefore affirm the trial court's dismissal of the fraud claim because plaintiffs have not alleged damages resulting from the alleged fraud.

Affirmed.